OPINION
{¶ 1} Appellant, Willie Mack Lee, appeals from a jury conviction by the Trumbull County Court of Common Pleas, finding him guilty of possession of crack cocaine, in violation of R.C.2925.11(A) and (C)(4)(e), with a specification of forfeiture, in violation of R.C. 2925.42(A)(1)(a) and/or (b). For the reasons that follow, we affirm in part, reverse in part, and remand for further proceedings.
 {¶ 2} The following facts were disclosed during a suppression hearing and subsequent trial by jury. In the early evening of May 9, 2000, appellant and his friend, Angelo Huffman ("Huffman"), drove to a BP gas station located at Belmont Avenue, Trumbull County, Ohio. At the time of their arrival, police officer A[1] ("Officer A"), of the Liberty Township Police Department, was positioned within his police car at the BP gas station.
 {¶ 3} Officer A noted that appellant's vehicle, a 1993 Jeep Cherokee, was historically one of the most stolen vehicles in the United States. As a result, Officer A entered the vehicle's license plate number into his mobile Law Enforcement Automated Data System ("L.E.A.D.S."). L.E.A.D.S. immediately informed Officer A that there was a warrant for appellant's arrest based upon a contempt of court charge. L.E.A.D.S. further informed Officer A that he was to proceed with caution, as appellant had previous convictions for aggravated burglary and weapons charges. After Officer A verified the L.E.A.D.S. physical description of appellant, he received notice from dispatch that the warrant was still active.
 {¶ 4} While appellant attended to his vehicle, Officer A contacted three nearby Liberty Township Police Officers to assist him in apprehending appellant. The three assisting police officers were positioned near the BP gas station. Officer A waited approximately twenty-four minutes for appellant and Huffman to leave the gas station. In the hope of facilitating appellant's apprehension, Officer A proceeded to drive his police car toward the gas station's exit.
 {¶ 5} When Officer A began to leave, appellant and Huffman put the Jeep Cherokee into gear and drove toward a different exit. Officer A then gave the order for the assisting police officers to converge on appellant's vehicle. Ultimately, appellant's vehicle was stopped on a public street by police officer B ("Officer B"), approximately forty feet from the gas station.
 {¶ 6} Officer B approached the vehicle, and appellant immediately identified himself as Willie Mack Lee. Appellant was notified that, due to his outstanding warrant, he was being placed under arrest.
 {¶ 7} Huffman was then asked to exit the vehicle and was patted down by one of the police officers. The police officer's pat down revealed that Huffman was carrying marijuana. Huffman was also placed under arrest.
 {¶ 8} Appellant was placed in the back seat of Officer B's police car. Prior to towing the Jeep Cherokee, Officer A conducted an inventory search of the vehicle. During the inventory search, Officer A discovered four baggies of crack cocaine placed in the vehicle's center console. Appellant witnessed the inventory search and told Officer A to contact a drug enforcement agent, whom he was allegedly working for as an informant. Subsequently, the agent informed Officer A that, although appellant had previously worked as an informant, he was no longer acting on behalf of the agency at the time of his arrest.
 {¶ 9} The Trumbull County Grand Jury indicted appellant for knowingly possessing crack cocaine, in violation of R.C.2925.11(A) and (C)(4)(e). In addition, the grand jury found the following items, confiscated from appellant at the time of his arrest, to be subject to forfeiture pursuant to R.C.2925.42(A)(1)(a) and/or (b): (1) the 1993 Jeep Cherokee; (2) two cellular phones; (3) a Hewlett-Packard computer and monitor; (4) two Polk audio speakers; (5) numerous music compact discs; and (6) gold jewelry.
 {¶ 10} Prior to trial, a hearing was held on appellant's oral motion to suppress. Appellant argued that Officer A's discovery of the crack cocaine was the result of an illegal search. The state contended that Officer A's search was a valid inventory search of the vehicle.
 {¶ 11} On October 18, 2000, the trial court overruled the motion to suppress, determining that appellant's stop was based on probable cause and that the search of appellant's vehicle was a valid inventory search made in accordance with an established written policy of the police department.
 {¶ 12} On February 12, 2001, a trial was held, and the jury rendered a unanimous verdict finding appellant guilty of knowingly possessing 92.94 grams of crack cocaine and determining that the aforementioned property items were subject to forfeiture.
 {¶ 13} Appellant was sentenced to serve a prison term of six years plus costs. On February 22, 2001, the trial court issued an additional judgment entry noting that appellant waived all interest in the property subject to forfeiture, thereby forfeiting the property to the state.
 {¶ 14} From this judgment, appellant filed a timely notice of appeal and sets forth the following assignments of error for our consideration:
 {¶ 15} "[1.] The trial court erred by ordering the forfeiture of appellant's property.
 {¶ 16} "[2.] The trial court erred by refusing to grant appellant's motion for suppression of evidence.
 {¶ 17} "[3.] The Appellant's convictions are against the manifest weight of the evidence."
 {¶ 18} For the sake of clarity, we will discuss appellant's assignments of error out of order. Under his second assignment of error, appellant contends that the trial court erred by denying his motion to suppress. Specifically, appellant argues that because the contents of the vehicle's center console was not within his immediate control at the time of his arrest, and because he was arrested for a warrant on a traffic violation, there was no probable cause to validate a search of the vehicle.
 {¶ 19} At a hearing on a motion to suppress, the trial court functions as the trier of fact. Accordingly, the trial court is in the best position to weigh the evidence by resolving factual questions and evaluating the credibility of witnesses. State v.Mills (1992), 62 Ohio St.3d 357, 366; State v. Smith (1991),61 Ohio St.3d 284, 288.
 {¶ 20} On review, an appellate court must accept the trial court's findings of fact if they are supported by competent and credible evidence. State v. Retherford (1994),93 Ohio App.3d 586, 592. After accepting the factual findings as true, the reviewing court must independently determine, as a matter of law, whether the applicable legal standard has been met. Id. at 592. See, also, State v. Swank, 11th Dist. No. 2001-L-054, 2002-Ohio-1337, 2002 Ohio App. LEXIS 1345.
 {¶ 21} First, we note that "a police officer does not need to possess reasonable suspicion to conduct a random check of a license plate." State v. Rendina, 11th Dist. No. 2001-L-199, 2002-Ohio-3582, at ¶ 10. See, also, State v. Freeman, 11th Dist. No. 2001-T-0008, 2002-Ohio-1176, 2002 Ohio App. LEXIS 1205, at 6, citing State v. Owens (1991), 75 Ohio App.3d 523, 525. Thus, Officer A's random check of appellant's license plate was lawful.
 {¶ 22} More importantly, there was an outstanding warrant for appellant's arrest. Accordingly, the constitutional prerequisite of probable cause under the Fourth Amendment of the United States Constitution was not required to effectuate a legal arrest of appellant.
 {¶ 23} That being said, the evidence presented at the suppression hearing established that a valid inventory search of appellant's vehicle was performed prior to towing the vehicle. As a result, probable cause was not required to conduct a warrantless search of the Jeep Cherokee.
 {¶ 24} "Inventory searches are a `well-defined exception to the warrant requirement of the Fourth Amendment.'" State v.Mesa, 87 Ohio St.3d 105, 108, 1999-Ohio-253, quoting Coloradov. Bertine (1987), 479 U.S. 367, 371. An inventory search is considered an administrative function of the police that serves three purposes: (1) it protects an individual's property while it is in police custody; (2) it protects the police against frivolous claims of lost, stolen, or vandalized property; and (3) it protects the police from weapons. Mesa at 109.
 {¶ 25} An inventory search "which is conducted with an investigatory intent, and which is not conducted in the manner of an inventory search, does not constitute an `inventory search' and may not be used as a pretext to conduct a warrantless evidentiary search." State v. Caponi (1984), 12 Ohio St.3d 302, at syllabus. Evidence establishing a standardized criteria or policy demonstrates that the claimed inventory search is not just a ruse for an otherwise illegal search. State v. Piatt (June 15, 2001), 11th Dist. No. 2000-P-0051, 2001 Ohio App. LEXIS 2716, at 5. Thus, for an inventory search to be constitutionally permissible, the state must present evidence establishing a standard policy which relates to an inventory search. Id. at 5, citing State v. Corrado (Feb. 20, 1998), 11th Dist. No. 96-L-104, 1998 Ohio App. LEXIS 642, at 24.
 {¶ 26} During the suppression hearing, Officer B testified that, at the time of appellant's arrest, the written policy of the Liberty Township Police Department required an inventory search of any vehicle prior to its being towed by the police. The police department's written policy was formally admitted as an exhibit at the suppression hearing. It stated as follows:
 {¶ 27} "No vehicle, other than by owner request, will be towed until a thorough inventory and a tow card have been completed by the Officer responsible. There will be no exception to this order with regard to police tows. The purpose being to account for all property in the vehicle and to eliminate potential liability should the owner of the vehicle claim property to be missing while said vehicle is in the custody of the Police Dept. or towing agency."
 {¶ 28} In the instant case, Officer A testified during the suppression hearing that, subsequent to appellant's arrest, he conducted an inventory search before towing the Jeep Cherokee, in accordance with the foregoing written policy. He further testified that it was during this inventory search that he discovered the four baggies of crack cocaine in the vehicle's center console.
 {¶ 29} The state presented sufficient, uncontradicted evidence which demonstrated that the inventory search did not deviate from the written policy's mandates. This portion of appellant's second assignment of error is not well-taken.
 {¶ 30} Despite the valid inventory search, appellant further maintains that an inventory search was not warranted, as the police officers should have allowed Huffman to drive the Jeep Cherokee home to avoid a police tow of the vehicle. We disagree.
 {¶ 31} First, we note that Huffman would have been unavailable to take possession of the vehicle. Testimony at the suppression hearing revealed that Huffman was placed under arrest for marijuana possession contemporaneously with appellant's arrest. Also, there was no evidence offered at the hearing that appellant either requested or consented to Huffman taking possession of his vehicle at the time of his arrest. Thus, this issue has not been timely raised. This portion of appellant's second assignment of error is not well-taken.
 {¶ 32} Appellant has failed to demonstrate that the search was an invalid inventory search. Therefore, appellant's second assignment of error is without merit.
 {¶ 33} Under his third assignment of error, appellant argues that his conviction was against the manifest weight of the evidence. Appellant contends that the state failed to provide evidence proving every element of the charged crime of possession of crack cocaine. Specifically, appellant maintains that the state failed to prove, beyond a reasonable doubt, that he "knowingly possessed" crack cocaine.
 {¶ 34} As an initial matter, we are inclined to note that appellant's arguments encompass both a manifest weight of the evidence argument and sufficiency of the evidence argument. "The legal concepts of `sufficiency of the evidence' and `weight of the evidence' are quantitatively and qualitatively different."State v. Miller, 96 Ohio St.3d 384, 2002-Ohio-4931, at ¶ 38. The test for sufficiency requires a determination of whether the state has met its burden of production at trial, while a manifest weight challenge questions whether the state has met its burden of persuasion. State v. Thompkins (1997), 78 Ohio St.3d 380,390, (Cook, J., concurring).
 {¶ 35} We will review appellant's third assignment of error under both a sufficiency of the evidence standard and manifest weight standard. When reviewing the sufficiency of the evidence to support a criminal conviction, a court must examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average trier of fact of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, citing Jackson v. Virginia
(1979), 443 U.S. 307.
 {¶ 36} The state supports a conviction with sufficient evidence either through direct evidence, circumstantial evidence, or both. State v. Waddy (1992), 63 Ohio St.3d 424, 430. The probative values of circumstantial evidence and direct evidence are identical. Jenks at 272.
 {¶ 37} Here, the state was required to prove that appellant did "knowingly obtain, possess, or use a controlled substance." R.C. 2925.11(A). Appellant expressly maintains that the state failed to provide sufficient evidence that he "knowingly possessed" crack cocaine; therefore, we must define these relevant terms.
 {¶ 38} R.C. 2901.22(B) states, "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." See, e.g., State v.Pollard (Apr. 13, 2001), 11th Dist. No. 99-A-0072, 2001 Ohio App. LEXIS 1753, at 14.
 {¶ 39} In the context of drug offenses, "possession" is defined by R.C. 2925.01(K), to wit:
 {¶ 40} "`Possess' or `possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found."
 {¶ 41} "Possession" of a controlled substance may be actual or constructive. State v. Thomas (1995), 107 Ohio App.3d 239. If the evidence establishes that appellant was able to exercise dominion and control over the controlled substance, although the substance was not within his immediate physical possession, appellant can be convicted of constructive possession of the substance. State v. Wolery (1976), 46 Ohio St.2d 316, 329. See, also, State v. Boyd (1989), 63 Ohio App.3d 790. To demonstrate constructive possession "[i]t must also be shown that the [defendant] was conscious of the presence of the object." Statev. Hankerson (1982), 70 Ohio St.2d 87, 92.
 {¶ 42} A jury may infer from the surrounding circumstances established by the evidence in the case that a defendant, shown to be in constructive possession of cocaine, knowingly
possessed it. See, e.g., State v. Davis (Sept. 24, 1998), 10th Dist. No. 98AP-192, 1998 Ohio App. LEXIS 4455, at 8, citingState v. Arthur (1975), 42 Ohio St.2d 67, 68-69. Thus, "it is reasonable to infer that a defendant knowingly possesses cocaine when he is shown to have had dominion and control over a bag of cocaine which was next to his seat in a car." (Emphasis added.) Davis at 8.
 {¶ 43} The evidence presented at trial established that appellant owned the vehicle in which the crack cocaine was found. The four baggies were found adjacent to the driver's seat in a center console. Furthermore, the state provided circumstantial evidence that appellant appeared to be conscious of the presence of drugs within his vehicle. Officer A opined that both appellant and Huffman seemed to be unnecessarily lingering at the BP gas station because of the police presence. Such evidence was corroborated by testimony that appellant and Huffman immediately left the gas station after observing Officer A exit the gas station.
 {¶ 44} More importantly, after Officer A conducted an inventory search, appellant requested that Officer A contact a drug enforcement agent for whom he was allegedly working as a drug informant. Officer A testified that this request was made before he informed appellant that crack cocaine had been found in the Jeep Cherokee. This is further corroboration that appellant knew of the presence of drugs within his vehicle. There was also no testimony that appellant told the officer that the drugs belonged to Huffman and not himself. Thus, the state of the evidence was sufficient for the jury to determine that appellant had constructive possession of crack cocaine.
 {¶ 45} Because the state presented sufficient evidence of constructive possession, it was proper for the jury to infer that appellant "knowingly" possessed the crack cocaine. Therefore, appellant's sufficiency argument is not well-taken.
 {¶ 46} When reviewing a claim that a judgment was against the manifest weight of the evidence, an appellate court must review the entire record, weigh both the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that a new trial must be ordered. State v. Martin (1983),20 Ohio App.3d 172, 175. See, also, Thompkins.
 {¶ 47} "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175. The role of the appellate court is to engage in a limited weighing of the evidence introduced at trial in order to determine whether the state appropriately carried its burden of persuasion. Thompkins
at 390 (Cook, J., concurring). The reviewing court must defer to the factual findings of the trier of fact as to the weight to be given the evidence and the credibility of the witnesses. Statev. DeHass (1967), 10 Ohio St.2d 230, paragraph two of the syllabus.
 {¶ 48} Appellant asserts that evidence of his behavior demonstrates that he did not know the crack cocaine was in his vehicle and that the drugs actually belonged to Huffman. In support of this contention, appellant notes that he did not leave the BP gas station and cross the nearby jurisdiction line immediately after seeing Officer A's police car parked at the gas station.
 {¶ 49} To determine whether appellant's behavior represented a non-culpable mental state, the jury was required to make credibility determinations with respect to appellant's testimony regarding his reasons for spending twenty-four minutes at the gas station and why he left immediately after Officer A exited the gas station. This court has no reason to disturb these credibility assessments on appeal, as the credibility of each witness was a critical issue for the trier of fact to determine.State v. Ready (2001), 143 Ohio App.3d 748. Thus, this portion of appellant's third assignment of error is not welltaken
 {¶ 50} Furthermore, there was no evidence presented at trial regarding appellant's knowledge of his proximity to the jurisdictional line. As a result, appellant cannot now contend on appeal that the absence of any attempted flight across a jurisdictional line demonstrates he was not conscious of the drugs in his vehicle. Accordingly, this portion of appellant's third assignment of error is not well-taken.
 {¶ 51} Appellant further argues that lottery tickets found in the center console, allegedly belonging to Huffman, also demonstrates that appellant had no knowledge of the drugs and that the drugs belonged to Huffman. We disagree.
 {¶ 52} Even presuming the lottery tickets were Huffman's, such evidence does not contradict an inference of possession. Instead, such evidence merely demonstrates the possibility that Huffman also knew of the crack cocaine in the vehicle. And, as previously mentioned, there is no evidence of any claim by appellant that the crack cocaine belonged to Huffman, when the drugs were discovered.
 {¶ 53} Based upon the foregoing, appellant has failed to demonstrate that the state presented insufficient evidence to sustain his conviction or that his conviction was against the manifest weight of the evidence. Appellant's third assignment of error is without merit.
 {¶ 54} Under his first assignment of error, appellant argues that the trial court committed reversible error by forfeiting the following items: (1) the 1993 Jeep Cherokee; (2) a Hewlett-Packard computer and monitor; (3) two cellular phones; (4) two Polk audio speakers; (5) numerous music compact discs; and (6) gold jewelry. Appellant maintains that the Jeep Cherokee was not subject to forfeiture under R.C. 2925.42(A)(1)(a) or (b), as such a forfeiture is an excessive fine. With respect to the remaining property items, appellant contends that they are not subject to forfeiture under R.C. 2925.42(A)(1)(a) or (b) as these items were "completely unrelated to the crime charged and therefore an unconstitutional forfeiture."
 {¶ 55} R.C. 2925.42(A)(1)(a) and (b) states that an individual convicted of a felony drug offense forfeits to the state any right, title, and interest he or she had in the subject property if either of the following applies: (1) "[t]he property constitutes, or is derived directly or indirectly from, any proceeds obtained directly or indirectly from the commission of the felony drug abuse offense or act;" or (2) "[t]he property was used or intended to be used in any manner to commit, or to facilitate the commission of, the felony drug abuse offense or act."
 {¶ 56} At the outset, we note that a procedural deficiency has occurred with respect to the trial court's forfeiture proceedings. R.C. 2925.42(B) sets forth the procedural requirements for a forfeiture proceeding pursuant to R.C.2925.42(A)(1)(a) and (b). Under R.C. 2925.42(B)(1)(a), a specification alleging that the property was related to the offense must be in the indictment. If the drug offense charge proceeds to a trial by jury, "the jury shall not be informed of any specification [described under division (A)(1)(a) or (A)(1)(b)] * * * prior to the alleged offender being convicted of * * * the felony drug abuse offense[.]" R.C. 2925.42(B)(4). Instead, after the defendant is convicted of a felony drug abuse offense, a special proceeding shall be conducted to determine whether the property described in the indictment will be subject to forfeiture. R.C. 2925.42(B)(3)(a).
 {¶ 57} In the instant case, the jury was informed of the forfeiture specification before it rendered a verdict on the drug abuse offense. The court provided the jury with jury instructions relating to the forfeiture of these property items. The jury determined the property items to be subject to forfeiture at the same time they entered a guilty verdict. See, e.g., State v.Owens (Dec. 29, 1993), 2nd Dist. No. 3039, 1993 Ohio App. LEXIS 6292, at 10-12, (holding that the trial court erred by informing the jury of a forfeiture specification prior to the defendant's conviction; however, such error was waived as the defendant failed to object). Thus, the trial court failed to follow the procedural requirements of R.C. 2925.42(B).
 {¶ 58} Notwithstanding the court's procedural error, no objection was made to the trial court, and appellant failed to raise this procedural error as a contention on appeal. Generally, the "[f]ailure to raise at the trial court level the issue of the constitutionality of a statute or its application, which issue is apparent at the time of trial, constitutes a waiver of such issue and a deviation from this state's orderly procedure, and therefore need not be heard for the first time on appeal." Statev. Awan (1986), 22 Ohio St.3d 120, syllabus. Accordingly, appellant's failure to bring this procedural error to the attention of the trial court, and this court, has resulted in a waiver of this issue.
 {¶ 59} Despite this procedural deficiency, we will review appellant's contention that the forfeiture of his property was an excessive fine and improper.[2] Appellant again failed to raise an objection with the trial court as to whether the forfeiture of his property was an excessive fine. Thus, our review of this portion of appellant's first assignment of error will be made under a plain error analysis. Pursuant to Crim.R. 52(B), "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."
 {¶ 60} After an examination of the record before us, we conclude that the trial court's failure to make an independent determination as to whether the forfeiture of appellant's property items was excessive resulted in plain error requiring a reversal to the limited extend indicated.
 {¶ 61} The forfeiture of property pursuant to R.C. 2925.42 is a form of punishment and is considered a fine. State v. Hill
(1994), 70 Ohio St.3d 25, 34. A forfeiture will be considered an excessive fine only when, in light of all the relevant circumstances, the forfeiture is grossly disproportionate to the offense committed. Id. at 34. See, also, U.S. v. Bajakajian
(1998) 524 U.S. 321. "Accordingly, prior to entering an order of forfeiture, the trial court must make an independent determination whether forfeiture of [the] property is an `excessive fine' prohibited by the Excessive Fine Clauses of the Ohio and United States Constitution." (Emphasis added.) Hill at 34. See, also, State v. Wolfe (June 30, 2000), 7th Dist. No. 97 BA 37, 2000 Ohio App. LEXIS 2963, at 4; State v. Pocius (Dec. 13, 1996), 11th Dist. No. 95-L-179, 1996 Ohio App. LEXIS 5647, 10.
 {¶ 62} Absent from the record before us is any independent determination by the trial court regarding whether the forfeiture of appellant's property items was excessive. Moreover, there was no value assigned to the property items, thereby precluding an adequate appellate review of the proportionality of the forfeiture in relation to the offense committed.
 {¶ 63} The trial court's failure to determine whether the forfeiture of appellant's property items was excessive resulted in plain error, as appellant's substantial property rights were adversely affected by such error. Because the trial court's independent determination was mandatory, we are compelled to reverse the trial court's forfeiture of appellant's property items and remand this matter for the trial court to issue its determination in light of the relevant circumstances. Appellant's first assignment of error is with merit to the limited extent indicated.
Ford, P.J., Rice, J., concur.
[1] The names of the police officers have been concealed to protect their identity.
[2] As a brief aside, we note that included within the record is a waiver form purporting that appellant waived any interest in the property items that were forfeited. However, the waiver was not signed by appellant or his counsel. In addition, on appeal, neither party makes reference to this alleged waiver. Therefore, we will not consider the waiver to be valid, as it does not represent a knowing or voluntary waiver.