OPINION
{¶ 1} This appeal, submitted on the record and briefs of the parties, arises from the Ashtabula County Court of Common Pleas, wherein appellant, Robert M. Murray ("Murray"), was convicted of receiving stolen property, a fifth-degree felony.
 {¶ 2} The following facts were presented at trial. On December 18, 2001, at approximately 4:30 a.m., Aretha Vernon was leaving her home on East 109th Street in Cleveland to go to work at Ashtabula County Children Services. She had parked her recently purchased car, a 1992 Dodge Dynasty, on the street the night before, in its usual place. As she placed her belongings in the trunk compartment, she noticed the temporary tag was missing from the license plate holder area of the car. The tag had been affixed when she parked the car in that spot at approximately 6:30 p.m. the night before. Vernon was unable to travel to work that day, and notified the Cleveland Police Department that the tags were missing.
 {¶ 3} Approximately two months later, on February 13, 2002, at around 5:00 a.m., Lieutenant George Williams of the Ohio State Highway Patrol was traveling eastbound on Interstate 90 in Conneaut, Ohio, on routine patrol. He noticed a red Chevrolet Monte Carlo traveling westbound at a high rate of speed. He clocked the vehicle's speed at one hundred seven m.p.h. on his radar equipment. Lieutenant Williams turned around and began pursuing the vehicle.
 {¶ 4} The vehicle exited the interstate on to Route 193 with Williams in pursuit. The vehicle came to a stop in a Dairy Mart parking lot. Williams called the license number from the temporary tag displayed in the back window of the vehicle into dispatch. Williams approached the vehicle, noting three males were seated inside. Williams asked the driver to exit the vehicle, and, upon speaking with the driver (later identified as Murray), Williams detected a strong odor of alcohol. Williams asked Murray if he had any weapons or drugs on his person. Murray revealed he had marijuana and handed Williams two baggies from his pocket. Williams proceeded to do a pat-down search and then placed Murray in the back of his police cruiser. A marijuana pipe was subsequently recovered from the ashtray of the vehicle.
 {¶ 5} Williams asked the other two individuals to remain in the vehicle, and requested another police unit to come to the scene. The dispatcher subsequently informed Williams that the temporary license tag displayed in the rear window of the car had been reported stolen. Trooper Michael Trader arrived on the scene shortly thereafter and began performing field sobriety tests on Murray, while Williams drove the two passengers to a friend's home.
 {¶ 6} Murray was subsequently charged with driving while intoxicated, excessive speed, no operator's license, possession of drug paraphernalia, and possession of marijuana.
 {¶ 7} The Ashtabula County Grand Jury subsequently returned an indictment on April 4, 2002, charging Murray with receiving stolen property for possession of the stolen license tag, a felony of the fifth degree. The cases proceeded separately, with the felony charge of receiving stolen property under trial court case No. 02 CR 57 and the remaining misdemeanor charges under trial court case No. 02 CR 268. This current appeal relates solely to trial court case No. 02 CR 57 — the receiving stolen property conviction.
 {¶ 8} A jury trial commenced October 29, 2002. The jury returned a verdict of guilty, and Murray was subsequently sentenced to an eight-month term of incarceration.
 {¶ 9} Murray presents two assignments of error on appeal. The first assignment of error is:
 {¶ 10} "The trial court erred to the prejudice of the defendant-appellant when it overruled his Rule 29 motion for acquittal at the close of the state's case."
 {¶ 11} In his first assignment of error, Murray contends the trial court erred in overruling his Crim.R. 29 motion for acquittal at the close of the state's case, as the state failed to prove he knew or had reason to believe the temporary tag had been stolen.
 {¶ 12} Murray moved for a Crim.R. 29(A) motion for acquittal at the close of the state's evidence, citing the state's failure to establish he knew or had reason to believe the temporary tag had been stolen. After a short recess to research the matter, the trial court ultimately denied Murray's motion, concluding that, based upon the Supreme Court of Ohio's holding in State v. Arthur, an inference of guilt may be drawn from an unexplained possession of stolen property.[1] Murray renewed the motion at the end of the defense's case. The trial court again denied the motion, citing its previous rationale.
 {¶ 13} "A Crim.R. 29 motion for acquittal challenges the sufficiency of the evidence presented."[2] When determining sufficiency of the evidence, we must consider whether, after viewing the probative evidence in a light most favorable to the prosecution, "`"any rational trier of fact could have found all of the elements of the offense beyond a reasonable doubt."'"[3]
 {¶ 14} R.C. 2913.51, receiving stolen property, reads, in part:
 {¶ 15} "(A) No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense."
 {¶ 16} R.C. 2901.22(B) states, "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 17} The Supreme Court of Ohio has recognized that one factor to be considered in determining whether reasonable minds could conclude whether a defendant knows or should know property has been stolen is the defendant's unexplained possession of the stolen property.[4] This court, as well as other Ohio appellate districts, has adhered to that rationale.[5]
 {¶ 18} In State v. Lee, the defendant was convicted of possession of crack cocaine. On appeal, the defendant asserted the state had failed to prove every element of possession — namely, that the defendant knowingly possessed the crack cocaine.[6] This court concluded, "[the] jury may infer from the surrounding circumstances established by the evidence in the case that a defendant, shown to be in constructive possession of cocaine, knowingly possessed it."[7]
 {¶ 19} In the instant case, the evidence presented at trial established that Murray was operating the vehicle in which the stolen temporary tag was displayed. The vehicle had recently been purchased by his stepfather. The arresting officers testified that, at the time of the stop, Murray offered no explanation for how the license came to be in the vehicle. At trial, Murray and his brother, Richard Kirby ("Kirby"), who were both in the vehicle at the time of the stop, testified that prior to that day the two were driving the same vehicle and Murray noticed the tag fly out of the window. The two claimed they stopped and returned to retrieve the tag, which was the tag at issue, and secured it in the back window of the vehicle. Both contended they were not aware that it was not the proper tag. Their individual testimony differed in that Murray testified that he saw the license fly out of the open car window and he stopped the vehicle and retrieved another license. Kirby testified that it was he who retrieved the wrong tag after the two suddenly noticed the tag was missing. In any event, the jury was not persuaded by either account, and ultimately found Murray guilty.
 {¶ 20} Thus, as the state presented evidence demonstrating Murray was in constructive possession of the stolen temporary license at the time of the stop, it met the sufficiency requirement in accordance with Lee.
Although Murray asserted an alternate explanation for how the license may have been placed in the vehicle, this does not negate the evidence presented by the state. Rather, the jury ultimately found the state's evidence more credible and found Murray guilty.
 {¶ 21} Murray's first assignment of error is without merit.
 {¶ 22} The second assignment of error is:
 {¶ 23} "The jury's conviction of appellant for receiving stolen property was against the manifest weight of the evidence."
 {¶ 24} In determining whether a verdict is against the manifest weight of the evidence, "`"the court reviewing the entire record, weighs theevidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."'"[8]
 {¶ 25} The appellate court sits as the "thirteenth juror" and engages in a limited weighing of the evidence introduced at trial to determine whether the state appropriately carried its burden.[9]
 {¶ 26} In his second assignment of error, Murray contends the jury "lost its way" in reaching its guilty verdict, reiterating his contention that the state failed to carry its burden that Murray had knowledge that the license was stolen. In support of this contention, Murray notes that it was his stepfather's car and again noted that he and his brother had lost the proper temporary tag en route, and retrieved the stolen tag by mistake. These contentions are identical to Murray's assertions at trial. The jury was not persuaded by Murray's account at trial. The reviewing court must grant deference to the factual findings of the trier of fact regarding the weight to be given the evidence and the credibility of the witnesses.[10]
 {¶ 27} Murray asserts that evidence of how he acquired the temporary tag demonstrates he did not know the license in the window of the vehicle he was driving was stolen. Again, Murray's possession of the stolen property, the testimony of the arresting officers, and the jury's ultimate credibility determination regarding Murray's version of events do not demonstrate that the jury lost its way in reaching its verdict.
 {¶ 28} Murray's second assignment of error is without merit.
 {¶ 29} Based on the foregoing, Murray's first and second assignments of error are without merit, and the judgment of the Ashtabula County Court of Common Pleas is affirmed.
Grendell, J., Rice, J., concur.
[1] State v. Arthur (1975), 42 Ohio St.2d 67.
[2] State v. Freeman, 11th Dist. No. 2001-A-0053, 2002-Ohio-3366, at ¶ 6, citing State v. Talley (Sept. 25, 1998), 11th Dist. No. 97-L-169, 1998 Ohio App. LEXIS 4526, at *7.
[3] (Citations omitted.) State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, at *13-14.
[4] State v. Arthur 42 Ohio St.2d at 69, quoting Barnes v. UnitedStates (1973), 412 U.S. 837, 843.
[5] State v. Lee, 11th Dist. No. 2002-T-0168, 2004-Ohio-6954, at ¶42; State v. White, 12th Dist. No. CA2002-07-161, 2003-Ohio-2011; Statev. Davis (1988), 49 Ohio App.3d 109, 112.
[6] State v. Lee, 2004-Ohio-6954, at ¶ 33.
[7] (Emphasis in original.) Id. at ¶ 42, citing State v. Davis (Sept. 24, 1998), 10th Dist. No. 98AP-192, 1998 Ohio App. LEXIS 4455, at *8.
[8] (Citations omitted and emphasis in original.) State v. Schlee,
1994 Ohio App. LEXIS 5862, at *15.
[9] State v. Thompkins (1997), 78 Ohio St.3d 380, 388.
[10] State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.