OPINION
{¶ 1} Appellant, Jeffrey T. Fogle, appeals the judgment entered by the Portage County Court of Common Pleas. The trial court sentenced Fogle to an eight-year prison term for his conviction for assembly or possession of chemicals to manufacture a controlled substance.
 {¶ 2} In 2007, Fogle began a relationship with Amber Stemple ("Stemple"). Initially, Fogle and Stemple lived in Fogle's apartment in Akron, Ohio. Later, they moved into Laura Cox's home in Brimfield Township, Ohio. Laura Cox is Stemple's *Page 2 
grandmother, and Stemple and Fogle stayed in one of the bedrooms in her home. In addition, Stemple's six-year-old son, J.W., [1] and Stemple's father, Mark Stemple, lived in the home.
 {¶ 3} While living at Laura Cox's residence, Fogle offered to try to fix her van, which was broken down. Laura Cox agreed and gave Fogle a set of keys to the van. Also on this keychain was an extra key to the house.
 {¶ 4} On another occasion, Laura Cox testified that Fogle was on her porch with a black bag. She did not know what was in the bag. When J.W. approached the bag, Fogle told him not to step on the bag, because it was worth a lot of money.
 {¶ 5} A few weeks after moving into Laura Cox's residence, Fogle spanked J.W. for doing something in Fogle's bedroom. Then, Fogle went into the living room and told Mark Stemple that he would hit him as well if he had a problem with Fogle spanking J.W. Based upon these events, Laura Cox told Fogle he was no longer welcome to stay in her home. Fogle moved out of Laura Cox's residence.
 {¶ 6} The day after Fogle left, Laura Cox received a telephone call from her daughter, advising her to look for a black bag in the room that Fogle stayed in. Laura Cox did find a black bag in the room. Another of her daughters came to Laura Cox's residence and opened the bag. At that point, the police were called.
 {¶ 7} Officer Daniel Rafferty of the Brimfield Police Department responded to the scene. Laura Cox gave Officer Rafferty permission to search her home. In the bedroom that Fogle and Stemple had lived in, Officer Rafferty found black duffle bags. In addition, in a cabinet next to the bed, he found chemicals, glass jars, plastic tubing, and Stacker II caffeine tablets. Officer Rafferty contacted Chief David Blough of the *Page 3 
Brimfield Police Department, who responded to the scene. In addition, members of the Drug Enforcement Administration's ("DEA") clandestine methamphetamine team arrived at the scene and removed the chemicals and equipment from the house.
 {¶ 8} The following day, Laura Cox remembered that Fogle had not returned the keys to the van. In searching for the keys, Laura Cox's daughter-in-law found another black duffle bag in the van. The police were contacted. Officer Rafferty responded to the residence and found that the bag contained chemicals and filters. The DEA team again arrived at the scene and removed the chemicals and associated items.
 {¶ 9} Upon discovering the items, Chief Blough attempted to contact Fogle and Stemple. However, two phone calls to Stemple's cell phone were abruptly disconnected after Chief Blough identified himself. Fogle and Stemple went to southern Ohio and stayed with a friend for about six weeks. Fogle and Stemple then decided to return to Portage County and turn themselves in. At the Brimfield Police Department, Fogle was given his Miranda rights and then provided a written statement to Chief Blough. In his statement, Fogle stated the black bags belonged to Stemple's cousin, Kenny Mike Stemple ("Mike"). Fogle stated that he "kinda" knew what was in the bags. Finally, Fogle denied cooking methamphetamine, but admitted that he had used methamphetamine.
 {¶ 10} Fogle was indicted on two counts. Count one was illegal manufacture of drugs, a first-degree felony, in violation of R.C. 2925.04, and count two was assembly or possession of chemicals to manufacture a controlled substance, in violation of R.C. 2925.041(A)(C), a second-degree felony. Both charges contained specifications that *Page 4 
the offenses were committed in the presence of a juvenile. Fogle pled not guilty to these charges.
 {¶ 11} Prior to trial, Count 2 of the indictment was amended to indicate that the controlled substance that Fogle intended to manufacture was methamphetamine.
 {¶ 12} A jury trial was held. Prior to the beginning of trial, the court held a brief hearing outside the presence of the jury. The purpose of this hearing was to put a plea offer from the state on the record. The state offered to recommend a three-year prison term if Fogle pled guilty to count two. Fogle did not accept the state's offer. Thereafter, upon the state's motion, the trial court dismissed Count 1 of the indictment.
 {¶ 13} The state presented several witnesses, including Laura Cox, Officer Rafferty, and Chief Blough. After the state's case-in-chief, Fogle moved for acquittal pursuant to Crim. R. 29. The trial court denied his motion.
 {¶ 14} Fogle testified in his own defense. He admitted to carrying one of the black bags into the house. However, he testified that the bag belonged to Mike. After the defense rested, Fogle renewed his Crim. R. 29 motion for acquittal. The trial court denied his renewed motion.
 {¶ 15} The state called Stemple as a rebuttal witness. Stemple testified that Fogle cooked methamphetamine when they resided in Akron. Also, she testified that the items found in the bedroom belonged to Fogle and that he brought those things into the house. After the state presented its rebuttal evidence, Fogle renewed his Crim. R. 29 motion for acquittal. The trial court denied his renewed motion. *Page 5 
 {¶ 16} The jury found Fogle guilty of assembly or possession of chemicals to manufacture a controlled substance. The trial court sentenced Fogle to an eight-year prison term for his conviction.
 {¶ 17} Fogle raises three assignments of error. His first assignment of error is:
 {¶ 18} "The trial court erred when it denied [Fogle's] Motions for Acquittal under Rule 29."
 {¶ 19} A trial court shall grant a motion for acquittal when there is insufficient evidence to sustain a conviction. Crim. R. 29(A). When determining whether there is sufficient evidence presented to sustain a conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus, following Jackson v. Virginia
(1979), 443 U.S. 307.
 {¶ 20} Fogle was charged with assembly or possession of chemicals to manufacture a controlled substance, in violation of R.C. 2925.041, which provides, in part:
 {¶ 21} "(A) No person shall knowingly assemble or possess one or more chemicals that may be used to manufacture a controlled substance in schedule I or II with the intent to manufacture a controlled substance in schedule I or II in violation of section 2925.04 of the Revised Code.
 {¶ 22} "***
 {¶ 23} "(C) Whoever violates this section is guilty of illegal assembly or possession of chemicals for the manufacture of drugs. Except as otherwise provided in *Page 6 
this division, illegal assembly or possession of chemicals for the manufacture of drugs is a felony of the third degree, and, except as otherwise provided in division (C)(1) or (2) of this section, division (C) of section 2929.13 of the Revised Code applies in determining whether to impose a prison term on the offender. If the offense was committed in the vicinity of a juvenile or in the vicinity of a school, illegal assembly or possession of chemicals for the manufacture of drugs is a felony of the second degree ***."
 {¶ 24} On appeal, Fogle does not contest that the items in question could be used in the production of methamphetamine. In fact, at trial, defense counsel stipulated that "a meth lab [was] found." However, he does contest the state's evidence that he possessed the items.
 {¶ 25} While this issue is uncontested, we note the state provided sufficient evidence that the items found could be used in the production of methamphetamine. Officer Rafferty testified that he found chemicals, glass jars, plastic tubing, and Stacker II caffeine tablets. Chief Blough testified that he had investigated about 50 methamphetamine labs and that he is familiar with the methamphetamine production process. He testified to several of the specific items found in this matter and described each item's purpose in the production process. Finally, Cristina Regiman of the State Fire Marshal Forensic Lab testified that she tested chemicals found at Laura Cox's residence and the chemicals were consistent with methamphetamine production.
 {¶ 26} Laura Cox testified that her six-year-old great-grandson, J.W., lived in the home where the items were found. Thus, there was sufficient evidence that the offense was committed in the presence of a juvenile. *Page 7 
 {¶ 27} We will focus the remainder of our analysis on whether the state presented sufficient evidence that Fogle possessed the items.
 {¶ 28} "Possession of drugs can be either actual or constructive."State v. Rollins, 3d Dist. No. 11-05-08, 2006-Ohio-1879, at ¶ 22, citingState v. Haynes (1971), 25 Ohio St.2d 264. Even if the contraband is not in a suspect's "immediate physical possession," the suspect may still constructively possess the item, so long as the evidence demonstrates that he "was able to exercise dominion and control over the controlled substance." State v. Lee, 11th Dist. No. 2002-T-0168, 2004-Ohio-6954, at ¶ 41, citing State v. Wolery (1976), 46 Ohio St.2d 316, 329. To prove constructive possession, "[i]t must also be shown that the person was conscious of the presence of the object." State v. Hankerson (1982),70 Ohio St.2d 87, 91.
 {¶ 29} Fogle lived in the bedroom where the chemicals and equipment to manufacture methamphetamine were found. In addition, he was working on the broken-down van, in which additional items were found. As he had access to both of the areas where the contraband was found, he was able to exercise dominion and control over the items.
 {¶ 30} Laura Cox testified that she saw Fogle with a black bag and that Fogle warned J.W. to stay away from the bag because it was worth a lot of money. While Laura Cox admitted on cross-examination that she was not sure if this was the same bag that was found in the bedroom or the van, the fact that Fogle possessed a similar bag that was "worth a lot of money" is circumstantial evidence that Fogle was aware of what was in the other bags. The Supreme Court of Ohio has held that "`circumstantial evidence and direct evidence inherently possess the same probative value and *Page 8 
therefore should be subjected to the same standard of proof.'" State v.Biros (1997), 78 Ohio St.3d 426, 447, quoting State v. Jenks,61 Ohio St.3d 259, paragraph one of the syllabus. The Third Appellate District has held that constructive possession of contraband may be supported solely by circumstantial evidence. State v. Rollins, 2006-Ohio-1879, at ¶ 22, citing State v. Jenks, 61 Ohio St.3d at 272-273.
 {¶ 31} In addition, the state introduced Fogle's written statement to Chief Blough. In his statement, Fogle claimed the bags belonged to Mike. However, he acknowledged that he "kinda" knew what was in the bags and later found out that it was "stuff to cook meth." Further, Fogle stated that he carried one of the bags into the bedroom. Finally, Fogle stated that he has used methamphetamine in the past.
 {¶ 32} When this evidence is taken together and viewed in a light most favorable to the state, a rational trier-of-fact could conclude that Fogle assembled or possessed chemicals to manufacture a controlled substance.
 {¶ 33} Fogle's first assignment of error is without merit.
 {¶ 34} Fogle's second assignment of error is:
 {¶ 35} "The evidence presented was insufficient and Defendant's conviction was against the manifest weight of the evidence."
 {¶ 36} In our analysis of Fogle's first assignment of error, we concluded that the state presented sufficient evidence to support Fogle's conviction for assembly or possession of chemicals to manufacture a controlled substance. Therefore, we limit our analysis of this assignment of error to whether the verdict was against the manifest weight of the evidence. *Page 9 
 {¶ 37} In determining whether a verdict is against the manifest weight of the evidence, the Supreme Court of Ohio has adopted the following language as a guide:
 {¶ 38} "`The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" State v. Thompkins (1997), 78 Ohio St.3d 380, 387. (Citations omitted.)
 {¶ 39} Part of Fogle's defense strategy was to convince the jury that the items belonged to Stemple's cousin, Mike. Fogle testified on his own behalf and stated that the items belonged to Mike. Fogle testified he helped Mike by carrying one of the bags into the bedroom. He testified he did not know what was in the bags. In addition to his own testimony, Fogle notes that Laura Cox testified on cross-examination that the items could have been Mike's, because Mike was always in trouble.
 {¶ 40} The state rebutted Fogle's testimony that the items were Mike's through the testimony of Stemple. Stemple testified that Fogle had cooked methamphetamine when they lived in Akron. Further, she specifically testified that Fogle brought the items into the house and that the items belonged to him. Stemple testified that Mike and Fogle had discussed cooking methamphetamine and that Fogle had planned to teach Mike a different method of cooking methamphetamine.
 {¶ 41} Stemple acknowledged making a written statement to Chief Blough. In her statement, Stemple claimed the bags belonged to Mike and that she agreed to hold *Page 10 
the bags for him. However, at trial, Stemple testified that there was a deal between herself, Fogle, and Mike, in which Mike would take the blame for the methamphetamine items found in Laura Cox's home, because Mike was wanted by the authorities for unrelated offenses. In return, Fogle was supposed to make payments to Mike's commissary account, since he would be in jail anyway. At trial, Stemple testified that she was still acting under the deal when she provided the written statement, but that she was telling the truth at trial.
 {¶ 42} Fogle argues that Stemple was not a credible witness. We note that Stemple admitted she lied in her police statement. Further, Fogle points out that Stemple acknowledged she had prior convictions for offenses involving dishonesty. Also, Stemple testified that she has "short-term and long-term memory problems, a lot of them, from doing too many drugs." Finally, Fogle argues that Stemple had a reason to be dishonest because she received a reduced charge in exchange for pleading guilty and testifying against him.
 {¶ 43} The weight to be given to the evidence and the credibility of witnesses are primarily matters for the jury to decide. State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Also, in assessing the witnesses' credibility, the jury, as the trier-of-fact, had the opportunity to observe the witnesses' demeanor, body language, and voice inflections. State v. Miller (Sept. 2, 1993), 8th Dist. No. 63431, 1993 Ohio App. LEXIS 4240, at *5-6. Thus, the jury was "clearly in a much better position to evaluate the credibility of witnesses than [this] court." Id.
 {¶ 44} After reviewing Stemple's testimony, we do not believe the jury lost its way or created a manifest miscarriage of justice by choosing to believe it. While there were *Page 11 
reasons for Stemple to lie, her testimony was not incredible, in that it was supported by other evidence and was not self-contradicting.
 {¶ 45} Finally, Fogle argues that the trial court erred by permitting the state to introduce Chief Blough's testimony regarding the process of manufacturing methamphetamine after defense counsel agreed to stipulate to the presence of a methamphetamine laboratory. Fogle claims the trial court's actions violated the holding of Old Chief v. United States
(1997), 519 U.S. 172. In Old Chief, the United States Supreme Court held:
 {¶ 46} "A district court abuses its discretion under [Fed.R.Evid. 403] if it spurns a defendant's offer to concede a prior judgment and admits the full judgment record over the defendant's objection, when the name or nature of the prior offense raises the risk of a verdict tainted by improper considerations, and when the purpose of the evidence is solely to prove the element of prior conviction." Id. at syllabus.
 {¶ 47} This court has applied the holding in Old Chief to a situation where the trial court permitted the state to introduce evidence of the defendant's prior convictions for driving under suspension, despite the fact that the defendant was willing to stipulate to the fact he was an unlicensed driver at the time of the accident, satisfying the statutory enhancement. State v. Hatfield, 11th Dist. No. 2006-A-0033,2007-Ohio-7130, at ¶ 140-148. After this court released its decision inHatfield, the Supreme Court of Ohio has agreed to resolve a conflict among Ohio appellate courts as to whether Old Chief applies to "`Ohio, state law, prosecutions[.]'" State v. Baker, 119 Ohio St.3d 1441,2008-Ohio-4487. For the following reasons, we can resolve this case without determining the question pending before the Supreme Court of Ohio. *Page 12 
 {¶ 48} First, we note that Fogle did not object to Chief Blough's testimony. Thus, he has waived all but plain error. State v.Drummond, 111 Ohio St.3d 14, 2006-Ohio-5084, at ¶ 72-73, citingState v. Childs (1968), 14 Ohio St.2d 56, paragraph three of the syllabus. Plain error exists only where the results of the trial would have been different without the error. State v. Issa (2001),93 Ohio St.3d 49, 56, citing State v. Moreland (1990), 50 Ohio St.3d 58, 62.
 {¶ 49} Second, this matter is distinguishable from the Old Chief case. The holding by the Supreme Court of the United States in Old Chief
"represented a limited exception to the general principle that `the prosecution is entitled to prove its case free from any defendant's option to stipulate'" the evidence away. State v. Hatfield,2007-Ohio-7130, at ¶ 142, quoting Old Chief v. United States,519 U.S. at 189.
 {¶ 50} In this matter, Chief Blough's testimony provided additional details that were beyond the knowledge of the lay jurors. Chief Blough testified that several of the items, by themselves, do not appear criminal. For example, Chief Blough described the uses of iodine, pseudoephedrine, drain opener, tubing, and glass jars in the production process. Chief Blough's testimony described how ordinary items can become criminal when used together for the purpose of producing methamphetamine. Thus, his testimony was appropriate in an attempt to "satisfy the jurors' expectations about what proper proof should be."Old Chief v. United States, 519 U.S. at 188.
 {¶ 51} Finally, we note the primary concern of the Supreme Court inOld Chief was the danger of unfair prejudice pursuant to Fed.R.Evid.403. Old Chief v. United States, 519 U.S. at 184-185. The court held, "[i]n dealing with the specific problem raised by [the statute] and its prior-conviction element, there can be no question that *Page 13 
evidence of the name or nature of the prior offense generally carries a risk of unfair prejudice to the defendant." Id. at 185.
 {¶ 52} In the case sub judice, Chief Blough's testimony was not unfairly prejudicial to Fogle. This is because the additional prejudice, if any, would only arise if the jury found Fogle possessed the items in question. If Fogle's version of the evidence was believed, there would be no prejudice to him since, in that scenario, he did not possess the items.
 {¶ 53} The trial court's decision to permit the state to introduce Chief Blough's testimony does not rise to the level of plain error.
 {¶ 54} Fogle's conviction is not against the manifest weight of the evidence.
 {¶ 55} Fogle's second assignment of error is without merit.
 {¶ 56} Fogle's third assignment of error is:
 {¶ 57} "The trial [court] erred in imposing the maximum sentence to the Defendant."
 {¶ 58} After the State v. Foster decision, "[t]rial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences."State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, at paragraph seven of the syllabus. The Supreme Court of Ohio, in a plurality opinion, has recently held that felony sentences are to be reviewed under a two-step process. State v. Kalish, 120 Ohio St.3d 23, 2008-Ohio-4912, at ¶ 26. The court held:
 {¶ 59} "First, [appellate courts] must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the *Page 14 
sentence is clearly and convincingly contrary to law. If this first prong is satisfied, the trial court's decision in imposing the term of imprisonment is reviewed under the abuse-of-discretion standard." Id.
 {¶ 60} In the case sub judice, Fogle does not challenge his sentence on the ground that it is contrary to law. He only alleges that the trial court abused its discretion by imposing a maximum sentence. Accordingly, we will only review this sentence to determine if the trial court abused its discretion. "The term `abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." State v. Adams (1980),62 Ohio St.2d 151, 157. (Citations omitted.)
 {¶ 61} Initially, we note that Fogle's eight-year sentence is within the statutory range for a second-degree felony, pursuant to R.C. 2929.14(A)(2). Fogle's argument on appeal is that the trial court imposed the eight-year sentence after a three-year sentence was discussed as part of plea negotiations. A defendant should not be punished for exercising his or her constitutional right to trial or for refusing to accept a proposed plea agreement. State v. O'Dell (1989),45 Ohio St.3d 140, paragraph two of the syllabus.
 {¶ 62} Immediately prior to trial, the following colloquy occurred:
 {¶ 63} "MR. MULDOWNEY [assistant prosecutor]: Your Honor, the State of Ohio has offered the Defendant enter a written plea of guilty to count two, which is a felony of the second degree.
 {¶ 64} "Further, we have agreed that should he enter that plea to a felony of the second degree, he would receive three years in the Ohio Department of Correction. *Page 15 
 {¶ 65} "THE COURT: So you are recommending —
 {¶ 66} "MR. MULDOWNEY: That would be the minimum [sic].
 {¶ 67} "THE COURT: Before trial, the minimum?
 {¶ 68} "MR. MULDOWNEY: That's correct.
 {¶ 69} "***
 {¶ 70} "THE COURT: Sir, you are rejecting that at this time?
 {¶ 71} "DEFENDANT: Yes.
 {¶ 72} "THE COURT: You understand that if the State prevails, you're looking at eight years in prison?
 {¶ 73} "DEFENDANT: Yep.
 {¶ 74} "THE COURT: You understand that?
 {¶ 75} "DEFENDANT: Yep."
 {¶ 76} While the state indicated that it would recommend a three-year prison term if Fogle pled guilty, the trial court never acquiesced to a three-year term. In fact, the trial court was not bound to accept the state's recommendation and could have imposed any prison term within the range for a second-degree felony, from two to eight years. See, e.g.,State v. Johnson, 2007-L-195, 11th Dist. No. 2008-Ohio-6980, at ¶ 24. Accordingly, Fogle did not have an expectation of a three-year prison term.
 {¶ 77} Moreover, the record does not demonstrate the trial court increased its sentence as a result of the failed plea negotiations. The Eighth District has applied the following standard:
 {¶ 78} "To determine vindictiveness, we look to see whether the record affirmatively shows retaliation as a result of the rejected plea bargain. *** *Page 16 
Vindictiveness on the part of a sentencing court is not presumed merely because the sentence imposed is harsher than one offered in plea negotiations. ***." State v. Collins, 8th Dist. No. 89529,2008-Ohio-578, at ¶ 84. (Internal citations omitted.)
 {¶ 79} In this matter, the trial court's judgment entry does not provide any reasons in support of Fogle's sentence. The only statements made by the trial court in support of its sentence occurred at the sentencing hearing, where the following colloquy occurred:
 {¶ 80} "THE COURT: I'd like to hear from Mr. Fogle.
 {¶ 81} "MR. JUDY [defense counsel]: If we can have just a moment.
 {¶ 82} "DEFENDANT: I really don't know what to say. I guess I'm sorry for carrying that bag, but most of all, I've never been to prison. Mostly, I really want to ask you for mercy for my pregnant girlfriend more than me.
 {¶ 83} "THE COURT: Now you want me to show her mercy.
 {¶ 84} "DEFENDANT: You asked me what I —
 {¶ 85} "THE COURT: You threw her on the sword and now you want me to —
 {¶ 86} "DEFENDANT: She's carrying my child.
 {¶ 87} "MR. JUDY: Your Honor, I think his concern — — his concern is Amber Stemple, but I know throughout the course of my relationship with Jeff, he's always been concerned about his child.
 {¶ 88} "THE COURT: He's always been concerned about whether he was — Mr. Fogle, you are a scam artist, one of the best.
 {¶ 89} "You can cry at the drop of a dime. You tried to get that jury's sympathy and then you turn it off within seconds. *Page 17 
 {¶ 90} "I saw your reaction. I saw when you would walk back into that holding cell after the jury I [sic] left, it was immediate. You don't care about anyone but yourself. If you think I buy that you care about your baby, you are wrong. You are going to learn something, sir, from all this. You are going to learn that you are not to have drugs in my county or anything to manufacture drugs in my county.
 {¶ 91} "You may be one of the top cooks in Akron, you may be a big man there, but you are going to have a hard time in prison."
 {¶ 92} The trial court did not indicate it was increasing Fogle's sentence as a result of his failure to plead guilty. Instead, the trial court's minimal statement at the sentencing hearing suggested it did not find Fogle genuinely remorseful for his actions, which is a valid consideration, pursuant to R.C. 2929.12(D)(5), pertaining to Fogle's recidivism potential.
 {¶ 93} The trial court did not abuse its discretion by imposing an eight-year prison term.
 {¶ 94} Fogle's third assignment of error is without merit.
 {¶ 95} The judgment of the trial court is affirmed.
DIANE V. GRENDELL, J., concurs, COLLEEN MARY O'TOOLE, J., concurs in judgment only.
[1] We will refer to Stemple's son by his initials. *Page 1