[Cite as *State v. Adams*, 2013-Ohio-1603.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2012-A-0025** |
| LARRY ADAMS, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Ashtabula County Court of Common Pleas, Case No. 2011 CR 254.

Judgment: Affirmed.

*Thomas L. Sartini*, Ashtabula County Prosecutor, and *Shelley M. Pratt*, Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047 (For Plaintiff-Appellee).

*Russell S. Bensing*, 1370 Ontario Street, Suite 1350, Cleveland, OH 44113 (For Defendant-Appellant).

DIANE V. GRENDELL, J.

{¶1} Defendant-appellant, Larry Adams, appeals his convictions, following a jury trial in the Ashtabula County Court of Common Pleas, for three counts of Trafficking in Heroin and one count of Possession of Heroin, as well as the court's order that he forfeit his interest in his real property. The issues to be determined by this court are whether a defendant has possession of heroin when it is found outside of his home, on an adjoining property; whether a mistrial occurs when a witness discusses "other acts"

of a defendant and such statements are stricken by the trial court; and whether forfeiture of a defendant's interest in real property is appropriate when his home was used to sell heroin. For the following reasons, we affirm the judgment of the trial court.

{¶2} On July 7, 2011, the Ashtabula County Grand Jury issued an Indictment, charging Adams with the following: three counts of Trafficking in Heroin (Counts One through Three), felonies of the fourth degree, in violation of R.C. 2925.03(A)(1) and (C)(6)(b); one count of Tampering with Evidence (Count Four), a felony of the third degree, in violation of R.C. 2921.12(A)(1); three counts of Receiving Stolen Property (Counts Five through Seven), felonies of the fourth degree, in violation of R.C. 2913.51(A) and (C); one count of Having Weapons while under Disability (Count Eight), a felony of the third degree, in violation of R.C. 2923.13(A)(3); and one count of Possession of Heroin (Count Nine), a felony of the second degree, in violation of R.C. 2925.11(A)(1) and (C)(6)(d). Counts One and Three also had forfeiture specifications, which related to the forfeiture of a sum of currency in the amount of $2,965 and real estate located at 8267 Fortney Road in Orwell, Ohio, while Count Two had a forfeiture specification for the money only.

{¶3} A jury trial was held in this matter on January 9-12, 2012. The following pertinent testimony and evidence were presented.

{¶4} James Byler testified regarding his purchase of heroin from Adams. Working with the Trumbull Ashtabula Group (TAG) Task Force, he participated in a "drug buy," in which he would purchase heroin from Adams with money provided by TAG. On February 9, 2011, he went to Adams' house and requested heroin. The parties discussed Adams placing the heroin in a bucket in the back of Byler's truck at a

later time, since Adams did not have heroin at that time, and Byler would later pay him $200. A recording of this conversation was played for the jury. On February 10, 2011, Byler returned to Adams' home, but still did not receive heroin. At that time, Byler observed a brown substance, which he believed to be heroin, in a bag on Adams' kitchen counter. Byler did not make any payment but agreed to pay for the heroin in the future. About a week later, Byler found heroin in his truck, in a toolbox, after Adams had called and stated that the item would be "in your truck," and told Byler to look in the toolbox. Byler explained that in exchange for participating in the drug buy, he received "gas money" from the TAG Task Force in the amount of $20 per day.

{¶5} Damian Schultz also testified regarding two drug buys he made from Adams, while working in conjunction with the TAG Task Force. On March 2, 2011, Schultz paid $200 in exchange for approximately one gram of a substance, which he believed to be heroin, from Adams, wrapped in magazine paper. An audio recording of the transaction was presented as evidence and played for the jury. Upon Schultz's request for a gram of heroin, according to his testimony, Adams removed the heroin from a bag contained in a clear Mason, or canning, jar in his kitchen, and weighed out the gram on a scale.

{¶6} On April 13, 2011, a second transaction occurred, during which Schultz purchased a half of a gram of heroin, which was wrapped in a lottery ticket, in exchange for $100. A video of this transaction was played for the jury. In exchange for his participation in these drug buys, Schultz explained that a drug paraphernalia charge against him was dropped. He was paid $50 by TAG on each day. Schultz also testified that he had bought drugs from Adams "at other times." The defense moved to strike

3

this statement, the objection was sustained, and the jury was instructed to disregard this comment.

{¶7} Following Schultz's testimony, Adams moved for a mistrial, based on the statements regarding other drug purchases, unrelated to the ones with which Adams was charged. This motion was denied by the court.

{¶8} Jeffrey Houser, a scientist at the Ohio Bureau of Criminal Identification and Investigation (BCI), testified that he tested .9 grams of a brown substance submitted by the TAG Task Force, and that the substance was heroin. Shervonne Bufford, also a scientist at BCI, tested another item submitted by TAG, which was .2 grams, and found it to be heroin. Both testified that no fingerprint or DNA testing was conducted on the heroin packets. A third test was performed by another BCI scientist, Barbara DiPetro Hoover, determining that the drugs provided for testing included .8 grams of heroin. These three substances were those that Schultz and Byler received from Adams.

{¶9} Following the drug buys, a search warrant was obtained for Adams' residence, located at 8267 Fortney Road in Orwell, Ohio. Detective Brian Cumberledge, with the Ashtabula County Sherriff's Office, assisted in executing the search warrant on April 19, 2011. He observed Adams and eleven other people in the home, including seven children. Detective Cumberledge explained that, while searching the land surrounding Adams' home, he found a weapon and ammunition in a field, approximately one hundred feet from Adams' home. He also saw many Mason jars and other items scattered "throughout the exterior perimeter of the property." He did not see

4

a trail in the ground from Adams' home to the location of the items found in the field area and could not say that the items found were located on Adams' property.

{¶10} Detective Tony Villanueva, assigned to the TAG Task Force, participated in the execution of the search warrant. He searched a "burn pile," or a fire pit, in a field area, approximately one hundred feet from Adams' home, where he found a Mason jar spray painted green, which contained marijuana. He also found another green Mason jar in the burn pile, containing a substance that tested positive in field tests as heroin. He explained that the burn pile was not on Adams' property but he could not see any houses next door to Adams', except across the street, from the location of the burn pile.

{¶11} Deputy Anthony Mino, of the Ashtabula County Sherriff's Department, testified that he found a "press" wrapped in plastic outside, just off of the property line. He explained that a press can be used to condense items and is frequently used to condense narcotics into cylindrical shapes, making them easier to conceal. He explained that heroin found on the property looked like it had been pressed. He also described that there was a "path" in the grass that led to some of the weapons and items found outside.

{¶12} Melanie Gambill, a member of the TAG Task Force, searched the inside of Adams' home and discovered a scale weight and a digital scale. She found a Mason jar with dirt on the lid located in the dining room, and another lid with dirt in the kitchen freezer. She also found plastic baggies and lottery tickets.

{¶13} Detective Richard Tackett, a member of the TAG Task Force, made a video of the execution of the search warrant, which was played for the jury. He explained that several empty Mason jars spray painted green were found outside the

home, in the yard, including a green jar containing marijuana. The jar of heroin found outside was 101 feet away from Adams' home. He noted that several jars and other items were submitted for fingerprint testing, but there were not sufficient ridge lines on the items to obtain a fingerprint. He explained that $2,960 in cash was found inside of the home but no heroin was found inside.

{¶14} Detective Greg Leonhard, a member of the TAG Task Force, explained that heroin is often packaged in magazine paper or lottery tickets, which were found inside Adams' home. He was involved in the drug buys and noted that Schultz gave him heroin wrapped in magazine paper on one occasion and a lottery ticket on the second occasion.

{¶15} Detective Leonhard explained that Adams stated, while the search warrant was being executed, that "he would take responsibility for anything within the house, but he would not take responsibility for anything not found on his property." During the search of the inside of the home, Detective Leonhard found several Mason jars in a box, in the same room as a green can of spray paint, which seemed "pretty new" and full. He explained that a BCI test showed that the green spray paint can found in the house did not match the spray paint on the Mason jars.

{¶16} DePietro-Hoover testified that one item submitted by TAG, the jar found in the burn pile, was found to contain 37.9 grams of heroin, in a pellet, or compressed, form.

{¶17} At the conclusion of the State's case, the court granted the State's motion to amend Counts Two and Three to eliminate the element "in the vicinity of a juvenile." Adams made a motion pursuant to Crim.R. 29, requesting acquittal on the charges

6

against him. The court granted Adams' motion for acquittal as to Counts Four through Eight and the remaining charges were submitted to the jury.

{¶18} On January 13, 2012, the jury found Adams guilty of Count One, a felony of the fourth degree, Trafficking in Heroin, and found that this offense was committed "in the vicinity of a juvenile." The jury also found Adams guilty of Counts Two and Three, as amended, felonies of the fifth degree, Trafficking in Heroin, and one count of Possession of Heroin. This verdict was memorialized in the trial court's January 18, 2012 Judgment Entry.

{¶19} On January 20, 2012, Adams filed an Amended Motion for Acquittal/Motion for New Trial. He argued that the verdict was not sustained by sufficient evidence as to Possession of Heroin (Count Nine) and that there was prosecutorial misconduct in eliciting "other acts" evidence from Schultz in his testimony. This Motion was overruled by the trial court on January 26, 2012.

{¶20} On May 21, 2012, the State filed a Motion for Verdict of Forfeiture. It asserted, inter alia, that the Fortney Road real estate owned by Adams should be forfeited, since it was used to conduct heroin sales, to store heroin for future sales, and to conceal his illegal drug trafficking operation. During the trial, the parties agreed that the issue of whether a forfeiture should occur would be decided by the judge.

{¶21} A sentencing and forfeiture hearing was held in this matter on May 23, 2012. At the hearing, the court sentenced Adams to 18 months in prison on Count One, 12 months on Count Two, 12 months on Count Three, and four years on Count Nine. These sentences were to be served concurrently, for a total prison term of four years.

Adams was also ordered to pay a $7,500 fine and court costs. This sentence was memorialized in a June 7, 2012 Amended Judgment Entry of Sentence.

{¶22} Regarding the issue of forfeiture, the State argued that Adams' interest in his real estate, which was the home where the drug buys took place and drugs were found, should be forfeited, since the home was used as a "shop" to sell heroin. Adams argued that his home was not an instrumentality of the crime and that it would be disproportionate to take his interest in the home based on small sales of heroin that took place there.

{¶23} The court determined that Adams' interest in the real estate would be forfeited to the State. The court found that the home "was a base of operations for Mr. Adams," since his drug deals were taking place at the home and he had various drug related items stored inside. The court concluded that the home was "used in the commission or to facilitate his commission of [the] offenses." On May 31, 2012, a Verdict of Forfeiture on R.C. 2981.02 was entered by the court, finding Adams to be the joint owner of the Fortney Road real estate, finding that it was used as an instrumentality in the crime of Trafficking in Heroin, and that the forfeiture was not disproportionate to the seriousness of the offenses of which Adams was convicted. The court valued Adams' interest in the property at $25,950.

{¶24} Adams timely appeals and raises the following assignments of error:

{¶25} "[1.] The trial court erred by failing to grant a judgment of acquittal, pursuant to Crim.R. 29(A), on the charge of possession of drugs, thereby entering a judgment of conviction of that offense which was not supported by sufficient evidence.

{¶26} "[2.]   The trial court erred by entering a judgment of conviction of possession of drugs that was against the manifest weight of the evidence.

{¶27} "[3.]   The trial court erred in failing to grant the defendant's motion for mistrial.

{¶28} "[4.]   The trial court erred in ordering the forfeiture of defendant's real property."

{¶29} Since Adams' first and second assignments of error address the sufficiency and manifest weight of the evidence, we will address them jointly.

{¶30} A trial court shall grant a motion for acquittal when there is insufficient evidence to sustain a conviction. Crim.R. 29(A). "'[S]ufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury," i.e., "whether the evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997), quoting Black's Law Dictionary (6 Ed.1990), 1433. In reviewing the sufficiency of the evidence to support a criminal conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶31} Weight of the evidence, in contrast to its sufficiency, involves "the inclination of the greater amount of credible evidence." (Citation omitted.) (Emphasis deleted.) *Thompkins* at 387. Whereas the "sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, * * * weight of the evidence addresses the evidence's effect of inducing belief."

9

(Citation omitted). *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25 "In other words, a reviewing court asks whose evidence is more persuasive -- the state's or the defendant's?" *Id.* The reviewing court must consider all the evidence in the record, the reasonable inferences, and the credibility of the witnesses, to determine whether, "in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." (Citation omitted.) *Thompkins* at 387.

{¶32} "Since there must be sufficient evidence to take a case to the jury, it follows that 'a finding that a conviction is supported by the *weight* of the evidence necessarily must include a finding of sufficiency.'" (Emphasis sic.) *Willoughby v. Wutchiett*, 11th Dist. No. 2002-L-165, 2004-Ohio-1177, ¶ 8, quoting *State v. Roberts*, 9th Dist. No. 96CA006462, 1997 Ohio App. LEXIS 4255, *5 (Sept. 17, 1997); *Thompkins* at 388 ("[a] reversal based on the weight of the evidence * * * can occur only after the State both has presented *sufficient evidence* to support conviction and has persuaded the jury to convict") (emphasis sic), quoting *Tibbs v. Florida*, 457 U.S. 31, 42-43, 102 S.Ct. 2211, 72 L. Ed.2d 652 (1982).

{¶33} Adams raises a challenge as to the sufficiency and weight of the evidence only as it relates to his conviction on Count Nine, Possession of Heroin. Adams argues that the only evidence of drug possession is that the Mason jar containing heroin was found in a burn pile 101 feet from his residence, on adjoining property. He further argues that no physical evidence was submitted tying him to the jar of heroin.

{¶34} In order to convict Adams of Possession of Heroin, the State was required to prove, beyond a reasonable doubt, that he did "knowingly obtain, possess, or use" heroin. R.C. 2925.11(A).

{¶35} There is no dispute in the present matter that the Mason jar found outside in the burn pile contained 37.9 grams of heroin. The only question is whether it was possessed by Adams. "Possession of drugs can be either actual or constructive." (Citation omitted.) *State v. Fogle*, 11th Dist. No. 2008-P-0009, 2009-Ohio-1005, ¶ 28. "Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession." *State v. Hankerson*, 70 Ohio St.2d 87, 434 N.E.2d 1362 (1982), syllabus. "Even if the contraband is not in a suspect's 'immediate physical possession,' the suspect may still constructively possess the item, so long as the evidence demonstrates that he 'was able to exercise dominion and control over the controlled substance.'" *Fogle* at ¶ 28, citing *State v. Lee*, 11th Dist. No. 2002-T-0168, 2004-Ohio-6954, ¶ 41. To prove constructive possession, "[i]t must also be shown that the person was conscious of the presence of the object." *Hankerson* at 91.

{¶36} In present case, the heroin in question was found in a glass Mason jar that was spray painted green and located outside, approximately 100 yards from Adams' home. Testimony established that, although police officers were unsure at the time of the search whether the heroin was on Adams' property, they later discovered that it was on an adjoining property. However, under the facts of this case, there was sufficient evidence to support a finding that Adams was in constructive possession of the heroin and his conviction was not against the manifest weight of the evidence.

11

**{¶37}** The Mason jar used to store the heroin was consistent with those found inside of Adams' home, in that it was the same or similar type and was painted green. Schultz testified that when he purchased heroin from Adams, it was removed from a glass jar. Green spray paint was found inside of the home, near a box of glass Mason jars, further supporting the conclusion that the jar of heroin found in the yard was Adams' and was used as part of his drug-selling operation. In addition, testimony was presented that several jars and lids found inside of Adams' home had dirt on them. Adams himself admitted that he was responsible for the items inside the home. The dirty jars inside of the home corresponded with the fact that the heroin jar was found outside, in a burn pile, on the ground. Together, these facts support a finding that although the heroin was not in Adams' immediate possession, he was able to exercise control over the substance and that he was conscious of the item's presence.

**{¶38}** Also, to the extent that it has been argued that there was no DNA or fingerprints to tie Adams to the jar containing the heroin, we note that "constructive possession of contraband may be supported solely by circumstantial evidence" and physical evidence is not required. *Fogle*, 2009-Ohio-1005, at ¶ 30, citing *State v. Rollins*, 3rd Dist. No. 11-05-08, 2006-Ohio-1879, ¶ 22, citing *Jenks*, 61 Ohio St.3d at 272-273, 574 N.E.2d 492.

**{¶39}** Although Adams argues that the heroin was not actually located within the boundaries of his property, this alone is not grounds to determine that he was not in possession of the heroin. Defendants cannot be permitted to simply place illegal items on the edge of their property line in order to evade legal consequences for the possession of such items. This would be contrary to the general principle that

12

individuals with access to a property but who do not own the property can be held to be in constructive possession of illegal items. *See State v. Mason*, 8th Dist. No. 78606, 2001 Ohio App. LEXIS 3019, *12 (July 5, 2001) (where defendant did not own the property on which the drugs were stored, she had access to the drugs and, therefore, was in constructive possession of the items). Further, it should be emphasized that testimony established that there were no visible houses, other than Adams' and a neighbor who lived across the street, from the burn pile, since there was a large amount of open space and a wooded area. Testimony also established that the two adjacent property owners both lived out of town and no evidence was presented to link the drugs to them.

{¶40} While Adams argues that he did not exercise exclusive control over the heroin, there is nothing to point to any other individuals controlling or accessing the heroin. However, regardless of whether other individuals may have access to the illegal items, this is not dispositive of whether Adams had constructive possession. *State v. Jackson*, 11th Dist. No. 2002-A-0039, 2003-Ohio-5863, ¶ 31-37 (where other adults are living in a home, with access to the area where drugs were discovered, a defendant can still be found in constructive possession of drugs). The foregoing facts all lend support to the proposition that Adams had access to, and possession of, the heroin.

{¶41} Adams also argues that even if the heroin had been found within his property lines, possession cannot be inferred solely from mere access through ownership of the premises. However, as noted above, there was sufficient evidence aside from just the proximity of the heroin to Adams' home to support a conviction.

{¶42} Finally, Adams asserts that since a judgment of acquittal was entered by the trial court on certain gun charges, based on the trial court's finding that there was a lack of evidence that Adams' possessed guns found outside of his home, the possession of heroin charge should have also been dismissed. However, the additional evidence linking the heroin outside of the home to the drug operation being conducted inside of the home distinguishes the possession of heroin charge from the weapons and stolen property charges.

{¶43} The first and second assignments of error are without merit.

{¶44} In his third assignment of error, Adams argues that the trial court erred in failing to grant his motion for a mistral. He asserts that a mistrial occurred based on a statement by Schultz that he had purchased drugs from Adams on occasions other than when the drug buys were performed, which was inadmissible testimony of "other acts" under Evid.R. 404(B).

{¶45} The State argues that the statement in question was stricken by the trial court and no prejudice resulted from it.

{¶46} A new trial may be granted "on motion of the defendant for any * * * [i]rregularity in the proceedings, * * * because of which the defendant was prevented from having a fair trial." Crim.R. 33(A)(1). "A mistrial should not be ordered in a criminal case merely because some error or irregularity has intervened, unless the substantial rights of the accused or the prosecution are adversely affected." *State v. Reynolds*, 49 Ohio App.3d 27, 33, 550 N.E.2d 490 (2nd Dist.1988). A mistrial must be declared where the accused has suffered material prejudice, "where there is 'a manifest necessity to do so,' or in order to 'serve the ends of public justice.'" (Citation omitted).

14

*State v. Grady*, 11th Dist. No. 2007-P-0010, 2007-Ohio-6411, ¶ 13. "The grant or denial of a mistrial rests within the sound discretion of the trial court." *State v. Anderson*, 11th Dist. No. 2009-T-0041, 2010-Ohio-2291, ¶ 44.

{¶47} Adams takes issue with the following exchange, which occurred on redirect examination of Schultz by the State:

{¶48} Prosecutor: And the heroin that was bought in these two particular incidents that you testified to, you said that you used heroin the night before and you needed more, correct?

{¶49} Schultz: Yes.

{¶50} Prosecutor: But did you receive any heroin when you bought it from Larry Adams?

{¶51} Schultz: For the detectives?

{¶52} Prosecutor: Yes.

{¶53} Schultz: No.

{¶54} Prosecutor: So it doesn't matter that you needed more, right? You didn't get any from Larry Adams on those days for your personal use?

{¶55} Schultz: Later in the days.

{¶56} Prosecutor: At other times?

{¶57} Schultz: Yes.

{¶58} While Adams asserts that the testimony regarding his "other acts," that Schultz purchased heroin from Adams at "other times" was inadmissible, it must be emphasized that the statement in controversy was not allowed in by the trial court. After Shultz made the statement about getting other drugs from Adams, defense counsel

15

objected. The trial court sustained the objection and stated, "I have to strike the last answer and the jury's instructed to disregard it." Further, during the jury instructions, the court instructed the jury that statements and answers stricken by the court "are not evidence and must be treated as though you never heard them." Therefore, the statement regarding any separate purchase of drugs was not before the jury for its consideration and whether the statement was legally admissible is not before this court. "A trial jury is presumed to follow the instructions given to it by the judge." *State v. Henderson*, 39 Ohio St.3d 24, 33, 528 N.E.2d 1237 (1988); *State v. Griesmar*, 11th Dist. No. 2009-L-061, 2010-Ohio-824, ¶ 32 (the court's action of instructing the jury to disregard a comment was sufficient to render a purported error harmless, since the jury was presumed to follow the curative instructions). There is nothing in the record to indicate that the trial court's instruction was not followed in this matter.

{¶59} Also, we cannot find that there was prejudice or a deprivation of Adams' right to a fair trial. There was sufficient evidence through the testimony outlined above of the various drug deals and the possession of heroin before the jury, such that it was unnecessary to consider evidence of a separate deal to convict Adams. Since there was no prejudice or indication that Adams did not receive a fair trial, we cannot find that the trial court abused its discretion in failing to declare a mistrial.

{¶60} The third assignment of error is without merit.

{¶61} In his fourth assignment of error, Adams argues that the trial court erred by ordering him to forfeit his interest in his real property, since the property was not an instrumentality of his crimes and the value of the property forfeited is disproportionate to the gravity of the crimes committed.

16

**{¶62}** The State argues that the property was an instrumentality of the crime since it was used to facilitate multiple drug deals and that the trial court properly found that the forfeiture was not disproportionate to the crimes committed.

**{¶63}** Pursuant to R.C. 2981.04(B), the State must prove "by a preponderance of the evidence that the property is in whole or part subject to forfeiture under section 2981.02 of the Revised Code" for the trier of fact to return a verdict of forfeiture. Since a forfeiture hearing is considered a civil proceeding, "in reviewing the substance of a forfeiture order on appeal, an appellate court must apply the same standard which is normally followed in relation to a civil judgment." *State v. Meeks*, 11th Dist. No. 2011-L-066, 2012-Ohio-4098, ¶ 32. When reviewing a judgment based on a preponderance of the evidence, we will not reverse the judgment if there is "some competent, credible evidence going to all the essential elements of the case." *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 280, 376 N.E.2d 578 (1978).

**{¶64}** Pursuant to R.C. 2981.02, property is subject to forfeiture in a criminal proceeding when it is "[a]n instrumentality that is used in or intended to be used in the commission or facilitation of" a felony. Further,

**{¶65}** [i]n determining whether an alleged instrumentality was used * * * in the commission * * * of an offense * * * in a manner sufficient to warrant its forfeiture, the trier of fact shall consider the following factors the trier of fact determines are relevant: (1) Whether the offense could not have been committed or attempted but for the presence of the instrumentality; (2) Whether the primary purpose in using the instrumentality was to commit or attempt to commit the

17

offense; (3) The extent to which the instrumentality furthered the commission of, or attempt to commit, the offense.

R.C. 2981.02(B).

{¶66} Regarding whether Adams' home was an instrumentality of the crimes, the trial court found that it was a "base of operations," that various items related to drug sales were found in and around the home, and the home was used to facilitate the commission of the offenses for which Adams was convicted. In the present matter, there was competent, credible evidence to support a conclusion that the existence and use of the home and property "furthered the commission of" such offenses. The home gave Adams a relatively private and safe place to conduct his drug activity. Each of the three heroin transactions took place or were initiated at that home and drugs were found in and around the home during the execution of the search warrant. The foregoing evidence supports the court's conclusion that Adams' home was an instrumentality of the crimes for which he was convicted, since it was used in furtherance of the commission of the offenses. The existence of this factor has been found sufficient to support a finding of forfeiture. *See State v. Bandarapalli*, 8th Dist. No. 96319, 2011-Ohio-6158, ¶ 32 (where a defendant used a vehicle to assist in the commission of the crime of prostitution by transporting a prostitute, the car was properly ordered forfeited because its use was in the furtherance of the crime); *State v. Parker*, 8th Dist. No. 93835, 2011-Ohio-1059, ¶ 121 (where vehicles were used to transport the defendants to the location where marijuana was being stored, the vehicles were used "in furtherance of the possession of marijuana" and were properly subject to forfeiture).

18

{¶67} Adams also argues that the forfeiture of his interest in the home is disproportionate to the crimes committed. The forfeiture of property is a form of punishment and is considered a fine. *State v. Hill,* 70 Ohio St.3d 25, 34, 635 N.E.2d 1248 (1994). "A forfeiture will be considered an excessive fine only when, in light of all the relevant circumstances, the forfeiture is grossly disproportionate to the offense committed." *State v. Lee*, 11th Dist. No. 2002-T-0168, 2004-Ohio-6954, ¶ 61, citing *Hill* at 34.

{¶68} In determining the proportionality of a forfeiture, many factors have been applied. "[A] lower court's proportionality analysis '* * * must necessarily accommodate the facts of the case and weigh the seriousness of the offense, including the moral gravity of the crime measured in terms of the magnitude and nature of its harmful reach, against the severity of the criminal sanction.'" *State v. Scheibelhoffer*, 11th Dist. No. 98-L-039, 1999 Ohio App. LEXIS 3094, *9 (June 30, 1999), quoting *Hill* at 33-34. This same proportionality analysis has been applied following the amendment of the forfeiture law in 2007. *See State v. Luong*, 12th Dist. No. CA2011-06-110, 2012-Ohio-4520, ¶ 53. Similarly, pursuant to R.C. 2981.09, "[i]n determining the severity of the offense for purposes of forfeiture of an instrumentality, the court shall consider all relevant factors including, but not limited to, * * * [t]he seriousness of the offense and its impact on the community, including the duration of the activity and the harm caused or intended by the person whose property is subject to forfeiture; * * * [t]he extent to which the person whose property is subject to forfeiture participated in the offense;* * * [and] [w]hether the offense was completed or attempted."

19

**{¶69}** In the present matter, Adams committed a serious offense, in that he sold heroin on three separate occasions, in the amount of $200 on one occasion and $100 on another, and had additional heroin and drug related items on or near his property. *See State v. Dissell*, 8th Dist. No. 96634, 2012-Ohio-354, ¶ 19 (upholding a sentence given by the trial court when it considered the seriousness of the crime and found that "heroin is probably one of the most severe forms of addiction that the court sees"). Adams also committed a drug sale near children on at least one occasion and children were found to be living in the home. The evidence points to the fact that this was an ongoing drug operation conducted out of Adams' home. Given these facts, and the consideration by the trial court that the forfeiture was not disproportionate to the crimes committed, we find that forfeiture in this case was proper. This is consistent with other cases in which forfeiture of real estate has been ordered where drug sales of a similar value were committed within the home. *See Scheibelhoffer* at *12-13 (finding the forfeiture of a residence valued at $31,470 when appellant sold $250 worth of cocaine to a police informant not to be grossly disproportionate); *In re Forfeiture of 1081 West State Street*, 7th Dist. No. 94-C-23, 1996 Ohio App. LEXIS 1918, *14 (May 13, 1996) (upholding the forfeiture of a house valued at approximately $30,000 where the amount of cocaine sold was valued at $250).[1]

**{¶70}** The fourth assignment of error is without merit.

---

1. Although these cases were decided prior to the amendment of the law in 2007, the proportionality analysis factors remain similar and these cases have been applied to support a finding of proportionality following the amendment of the law. *See State v. Smith*, 5th Dist. No. CT2007-0073, 2008-Ohio-3306, ¶ 44, citing *Scheibelhoffer* in support of the conclusion that forfeiture of an $11,000 property based on several heroin trafficking charges was not disproportionate to the crimes.

{¶71} For the foregoing reasons, the judgment of the Ashtabula County Court of Common Pleas, finding Adams guilty of three counts of Trafficking in Heroin and one count of Possession of Heroin, and ordering him to forfeit his interest in his real property, is affirmed. Costs to be taxed against appellant.

CYNTHIA WESTCOTT RICE, J.,

THOMAS R. WRIGHT, J.,

concur.