[Cite as *State v. Saenz*, 2014-Ohio-1408.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | : | Hon. Sheila G. Farmer, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | |
| MICHAEL SAENZ | : | Case No. 13-CA-70 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Court of Common
Pleas, Case No. 12 CR 00642

JUDGMENT:     Affirmed

DATE OF JUDGMENT:     March 26, 2014

APPEARANCES:

For Plaintiff-Appellee

BRIAN T. WALTZ
20 South Second Street
4th Floor
Newark, OH  43055

For Defendant-Appellee

THOMAS S. GORDON
8026 Woodstream Drive, NW
Canal Winchester, OH  43110

*Farmer, J.*

{¶1}    On December 12, 2012, a search warrant was executed on the home of appellant, Michael Saenz.  A large marijuana growing operation was discovered.

{¶2}    On December 21, 2012, the Licking County Grand Jury indicted appellant on one count of possessing marijuana in violation of R.C. 2925.11 and one count of cultivating marijuana in violation of R.C. 2925.04.  Each count carried a forfeiture specification on numerous items, including appellant's residence.

{¶3}    On April 5, 2013, appellant filed a memorandum contra to the forfeiture specification.

{¶4}    On July 2, 2013, appellant pled guilty as charged.  Following the plea, the trial court held a hearing on the forfeiture specification.  By judgment entry filed July 5, 2013, the trial court merged the marijuana counts and sentenced appellant to four years in prison and imposed a $7,500.00 fine.  The trial court also found appellant's residence was an instrumentality of the cultivation offense, and granted forfeiture of the items listed in the indictment, including appellant's residence.

{¶5}    Appellant filed an appeal and this matter is now before this court for consideration.  Assignments of error are as follows:

I

{¶6}    "INSUFFICIENT EVIDENCE WAS PRESENTED TO SUPPORT THE TRIAL COURT'S FORFEITURE ORDER."

II

{¶7}    "THE FORFEITURE OF THE HOME IS EXCESSIVE IN PROPORTION TO THE AMOUNT OF THE MANDATORY FINE LEVIED ON THE APPELLANT."

I

{¶8}   Appellant claims the forfeiture of his residence was against the sufficiency of the evidence.  We disagree.

{¶9}   Appellant also argues the forfeiture of weapons and military equipment was unwarranted.  We note during the forfeiture hearing, appellant objected to the forfeiture of only his residence (T. at 25-26):

MS. BURKETT: Your Honor, I believe that our legal argument is set forth in the memorandum contra, and the issue - - the only factual issue that we are disputing is whether or not the house was specifically designed to be used for marijuana.

THE COURT: Okay.

MS. BURKETT: I'm not sure that the Court finds that an element that it would consider in making its decision, but I'm prepared to offer evidence in that regard if it does.

And I should not say the only.  The second issue is how much income he actually derived from that, it that's an important issue for the Court in making a determination.  Those are the two issues that Mr. Saenz would testify to.

{¶10}  In closing argument, defense counsel stated the following: "So I would ask that the Court not grant the forfeiture as it is related to the home.  We didn't put on any

testimony specifically about the forfeiture of the weapons and are not specifically arguing that those are not subject to forfeiture. Thank you." T. at 58.

{¶11} In his memorandum contra filed April 5, 2013, appellant stated the following:

Now comes the defendant, by and through counsel, and respectfully moves this Honorable Court to deny the State of Ohio request that Mr. Saenz's residence be forfeited as a penalty herein. It is the position of Mr. Saenz that the forfeiture now sought is unconstitutional and, therefore, must be denied. Support for this position is provided in the memorandum below.

{¶12} Although this assignment is worded to include other items, the only issue via appellant's memorandum contra and the statements and arguments made during the hearing is the forfeiture of the residence.

{¶13} R.C. 2981.05(A) authorizes the seizure of property that is subject to forfeiture under R.C. 2981.02(A) which states the following in pertinent part:

(A) The following property is subject to forfeiture to the state or a political subdivision under either the criminal or delinquency process in section 2981.04 of the Revised Code or the civil process in section 2981.05 of the Revised Code:

(3) An instrumentality that is used in or intended to be used in the commission or facilitation of any of the following offenses when the use or intended use, consistent with division (B) of this section, is sufficient to warrant forfeiture under this chapter:

(a) A felony.

{¶14} R.C. 2981.02(B) mandates the following:

(B) In determining whether an alleged instrumentality was used in or was intended to be used in the commission or facilitation of an offense or an attempt, complicity, or conspiracy to commit an offense in a manner sufficient to warrant its forfeiture, the trier of fact shall consider the following factors the trier of fact determines are relevant:

(1) Whether the offense could not have been committed or attempted but for the presence of the instrumentality;

(2) Whether the primary purpose in using the instrumentality was to commit or attempt to commit the offense;

(3) The extent to which the instrumentality furthered the commission of, or attempt to commit, the offense.

{¶15} Forfeiture is restricted to a proportionality test [R.C. 2981.09(A), (C) and (D)]:

(A) Property may not be forfeited as an instrumentality under this chapter to the extent that the amount or value of the property is disproportionate to the severity of the offense. The owner of the property shall have the burden of going forward with the evidence and the burden to prove by a preponderance of the evidence that the amount or value of the property subject to forfeiture is disproportionate to the severity of the offense.

(C) In determining the severity of the offense for purposes of forfeiture of an instrumentality, the court shall consider all relevant factors including, but not limited to, the following:

(1) The seriousness of the offense and its impact on the community, including the duration of the activity and the harm caused or intended by the person whose property is subject to forfeiture;

(2) The extent to which the person whose property is subject to forfeiture participated in the offense;

(3) Whether the offense was completed or attempted.

(D) In determining the value of the property that is an instrumentality and that is subject to forfeiture, the court shall consider relevant factors including, but not limited to, the following:

(1) The fair market value of the property;

(2) The value of the property to the person whose property is subject to forfeiture, including hardship to the person or to innocent persons if the property were forfeited.

{¶16}  In its judgment entry filed July 5, 2013, the trial court went into great detail about its reasoning in ordering the forfeiture:

By defendant's admission in 2012, he should have generated in excess of $38,000.00 of profit from his cultivation operation.  The defendant pleaded guilty to a second degree offense of cultivation which carries with it a mandatory fine of $7,500.00 and a maximum fine of $15,000.

The defendant was charged and plead guilty to having over 16 pounds of marijuana in his basement.

The Court finds that the house at 1158 Louada Drive in Heath, Ohio was an instrumentality of the cultivation offense.  It was modified to permit the growing operation.  It was, by virtue of the crawl space dug out underneath the house, that instrumentality that hid the operation from the public and provided a safe place in which to conduct the cultivation operation.  The plumbing system had been modified to provide for the cultivation operation and ventilation had been attached to the sewer to further hide the operation.  The upstairs of the home had extra tubing, brand new and never yet used in order to either replace the existing tubing or to expand the cultivation operation.  The Court has considered the factors set out in State v. Adams, 213-OH-1603, such as whether the offense could not have been committed but for the presence of the house,

whether the primary purpose in using the offense and the extent to which the house furthered the commission of the offense.

The Court finds the offense could not have been committed without the home and the opportunity for the crawl space to have been dug out and that this home and crawl space facilitated and furthered the commission of the offense. The primary purpose of the home may not have been to commit the offense, but given the extent of the income generated and the extra equipment in the bedrooms and the bathroom, it was becoming the primary purpose of the home. No one else resided there other than the defendant.

Based on the amount of income generated through the sales for one year, let alone prior years, and the proportionality of those sales as well as the maximum fine of $15,000.00 to the value of the house, the Court cannot find that it is disproportionate not to forfeit the home. Earlier cases, such as State v. Adams, supra, or State v. Ziepfel, 107 App. 3d 646 (1995) upheld forfeitures where the proportionate value of sales or fines related to the value of the object forfeited were much greater. Other cases in Ohio have permitted the forfeiture of homes ranging in values of approximately $30,000.00 on the basis of a sale of merely $250. In the present case, the defendant was illegally producing 30% of the value of the asset annually.

The Court finds the house was the basis of operations for the cultivation operation which was used to conceal his trafficking operations.

His home was used as his shop to create the marijuana and was obviously the base of operations for the cultivation.

{¶17} Despite this reasoning, appellant argues the forfeiture of his residence fails under the "but for" language of R.C. 2981.02(B)(1). Appellant argues there were many other places to grow marijuana other than the dug out crawl space of his residence i.e., a backyard, woods, farmers' fields, parks, etc. Appellant's Brief at 11.

{¶18} Appellant testified the crawl space was originally used for storage, but after he took ownership of the residence, he ran water pipes to the space to facilitate cultivation and grew "anything" including marijuana. T. at 28-29. He was experimenting with "hydroponics." T. at 29. He specifically designed the tubing and piping in the crawl space to grow marijuana, and he installed a dehumidifier to facilitate the growth of plants. T. at 33-34, 38.

{¶19} Appellant had very little means of support in regular employment. T. at 31-33. Appellant admitted his primary source of income was from marijuana that he grew, and he sold approximately four ounces of marijuana from his plants every week. T. at 35-37.

{¶20} In contrast to appellant's testimony, Newark Police Detective George Romano, Jr. described the crawl space as follows (T. at 44-46):

The crawl space access was through the master bedroom closet, approximately 24-by-24 square, covered with carpet, had its own door. When you enter down into the crawl space, the first area that you come to

appeared to be what we would call a cutting room, table set up, chairs set up where you could harvest the plants, if you will, in a separate area.

There was additionally five-gallon buckets of soil. It appeared as if an expansion process was going on as opposed to a wall, I couldn't say, but there was buckets of soil. Looked like they were ready to go back to the crawl space and outside.

There was two or three, depending upon how you looked at it, separate grow rooms modified in homemade walls, if you will, 2-by-4 plywood, styrofoam-type construction with a white plastic covering over the ceiling area, if you will, watering system within a hydroponic system. He did have a recirculating system more along the lines for the chemicals flowing through each of the watering tubes.

Not all the rooms were tied together, each room kind of controlled itself; however, it appeared that the water that was going with the chemicals was coming from a water line underneath the house there and in a "T"-type fashion. What also appeared to us is that there was a ventilation system to bring the odor and some of the heat off of the grow room into the sewer system, so it was tied together in two parts there.

Approximately a half of the underneath of that had been dug out, and the rest of it was traditional crawl space. Several cinder blocks that appeared to be originally support structure for the residence had been moved and stacked up. It did look as if there was going to be an expansion in that not only with the soil coming out, upstairs there was the

master bedroom, two bedrooms and a bathroom all that contained grow equipment. In the current state that the downstairs was, the upstairs tubes and the grow equipment was either replacements if something broke, or to be used for another operation or an expansion.

{¶21} Appellant admitted to Detective Romano that he had been growing marijuana since 2007 and lived on the profits from the growing operation. T. at 48-49.

{¶22} The trier of fact accepted the description of the residence, the amount of marijuana seized, and appellant's admissions to the detective. The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison,* 49 Ohio St.3d 182 (1990). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 1997-Ohio-260.

{¶23} Although appellant argues he could have grown marijuana elsewhere, the evidence supports the finding that the total manufacture and design of the hidden crawl space was for appellant's income producing product, marijuana. We find the forfeiture does not fail the "but for" test. In addition, there is no evidence in the record of the value of the residence. Appellant's only attempt at valuation was denied by the trial court via an objection. T. at 42.

{¶24} Upon review, we find the trial court did not err in ordering the forfeiture of the residence.

{¶25} Assignment of Error I is denied.

II

{¶26} Appellant claims the forfeiture of his residence was excessive in proportion to the amount of the mandatory fine. We disagree.

{¶27} The relevant portions of the proportionality statute, R.C. 2981.09, are cited above.

{¶28} Appellant argues the maximum fine was $15,000.00, he was ordered to pay $7,500.00, and the value of his residence exceeded $100,000.00. However, as noted above, there is no evidence in the record of the value of the residence. T. at 42.

{¶29} As explained by our brethren from the Eleventh District in *State v. Adams,* 11th Dist. Ashtabula No. 2012-A-0025, 2013-Ohio-1603, ¶ 68:

In determining the proportionality of a forfeiture, many factors have been applied. "[A] lower court's proportionality analysis ' * * * must necessarily accommodate the facts of the case and weigh the seriousness of the offense, including the moral gravity of the crime measured in terms of the magnitude and nature of its harmful reach, against the severity of the criminal sanction.' " *State v. Scheibelhoffer,* 11th Dist. No. 98–L–039, 1999 Ohio App. LEXIS 3094, *9, 1999 WL 476106 (June 30, 1999), quoting *Hill* at 33–34, 635 N.E.2d 1248. This same proportionality analysis has been applied following the amendment of the forfeiture law in 2007. *See State v. Luong,* 12th Dist. No. CA2011–06–110, 2012–Ohio–4520, ¶ 53. Similarly, pursuant to R.C. 2981.09, "[i]n determining the severity of the offense for purposes of forfeiture of an instrumentality, the

court shall consider all relevant factors including, but not limited to, * * * [t]he seriousness of the offense and its impact on the community, including the duration of the activity and the harm caused or intended by the person whose property is subject to forfeiture; * * * [t]he extent to which the person whose property is subject to forfeiture participated in the offense;* * * [and] [w]hether the offense was completed or attempted."

{¶30} It is appellant's burden to establish a disproportionate sentence. R.C. 2981.09(A). Appellant admitted to Detective Romano that he had been growing marijuana since 2007, and the cultivation of marijuana was his sole source of income and support. T. at 48-49.

{¶31} Upon review, we find nothing in the record to establish a punitive or disproportionate taking. The only fine imposed was the $7,500.00 mandatory fine.

{¶32} Assignment of Error II is denied.

{¶33}  The judgment of the Court of Common Pleas of Licking County, Ohio is hereby affirmed.

By Farmer, J.

Hoffman, P.J. and

Delaney, J. concur.


SGF/sg  303