[Cite as *State v. Morris*, 2014-Ohio-4293.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NOS.  2013-L-057<br>2013-L-058** |
| KEVIN D. MORRIS, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Lake County Court of Common Pleas, Case Nos. 12 CR 000223 and 13 CR 000140.

Judgment: Affirmed.


*Charles E. Coulson,* Lake County Prosecutor, and *Teri R. Daniel,* Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Thomas Rein,* Leader Building, #940, 526 Superior Avenue, Cleveland, OH 44114 (For Defendant-Appellant).


DIANE V. GRENDELL, J.

{¶1}   Defendant-appellant, Kevin D. Morris, appeals his convictions for Possession of Heroin and Possessing Criminal Tools, following a jury trial in the Lake County Court of Common Pleas, and the denial of his Motion for New Trial.  The issues before this court are whether forensic evidence such as fingerprints and chemical analysis is sufficient to support a conviction for possession of drugs found in another's dwelling, and whether a new trial is merited based on newly discovered evidence

tending to impeach one of the State's witnesses. For the following reasons, we affirm the judgments of the court below.

{¶2} On March 22, 2013, the Lake County Grand Jury issued an Indictment, charging Morris with Trafficking in Heroin (Count 1), a felony of the fifth degree in violation of R.C. 2925.03(A)(1); Possessing Criminal Tools (Count 2), a felony of the fifth degree in violation of R.C. 2923.24; Possession of Heroin (Count 3), a felony of the second degree in violation of R.C. 2925.11; and Possessing Criminal Tools (Count 4), a felony of the fifth degree in violation of R.C. 2923.24. All Counts of the Indictment carried a forfeiture specification, pursuant to R.C. 2941.1417 and 2981.04.

{¶3} On March 29, 2013, Morris appeared for arraignment and entered a plea of "not guilty."

{¶4} Morris' case was tried to a jury from April 23 through 25, 2013. The following testimony was presented on behalf of the State:

{¶5} Sergeant Brad Kemp of the Lake County Narcotics Agency testified that, on February 6, 2013, he participated in a "buy bust of heroin," targeting "Kevin Morris, a.k.a. Snake." Kemp conducted surveillance of a two-family residence at 207 West Jackson Street in Painesville, Ohio, while a confidential informant (CI) entered to purchase heroin from Morris.

{¶6} After the CI departed, Sergeant Kemp observed a Pontiac and a Dodge Dakota leave the residence. The Dodge was driven by Edward Nardi, a resident of 207 West Jackson Street, and was stopped at a nearby Clark gas station. Nardi later gave his consent to search the residence.

2

{¶7} Kemp continued his surveillance of the residence until Morris, Brian Wicks, and Raymond Hardmon (a.k.a. Dro) exited on foot, walking northbound on Jefferson Street. Morris was arrested and taken to jail. Kemp then conducted a search of the residence with Nardi present.

{¶8} Kemp described the residence as a "very small" two bedroom apartment. Nardi slept in one of the bedrooms. In the second bedroom, Kemp observed a digital scale on top of a dresser. In the top drawer, there was a glass dinner plate, razor blade, syringes, and a "brownish off-white substance" believed to be heroin. Underneath the mattress in the second bedroom, Kemp found a press, which is used for diluting the purity of heroin. Kemp noted that the heroin on the plate had a cylindrical shape consistent with the shape of the press.

{¶9} James Gerlosky (a.k.a. Dustin) testified that he is a recovering heroin addict and confidential informant for the Mentor Police Department. Gerlosky, who was already familiar with Morris, texted him and arranged to purchase $130 worth of heroin ("about a gram"). Prior to the transaction, Gerlosky was searched and provided with marked money and a "wire" recording device. Gerlosky was initially directed to the Grant Street Apartments in Painesville. When Morris did not appear, Gerlosky contacted him again and was directed to a house on First Street. Recordings of Morris directing Gerlosky to Grant and First Streets were played for the jury. Prior to arriving at First Street, narcotics agents removed Gerlosky's wire since Morris was acting suspicious and asking questions.

{¶10} After arriving at the house on First Street, Gerlosky was directed to 207 West Jackson Street. Hardmon (Dro) answered the door and admitted Gerlosky.

Hardmon threw Gerlosky against the wall and patted him down. Morris then told Gerlosky he would have to try some heroin before he would sell him the gram. Gerlosky went to the bathroom with Hardmon and pretended to snort a line of heroin. Gerlosky then tried to hand Morris the money but he refused to take it, telling Gerlosky to hand it to an "older white gentleman" who was present. Morris gave Gerlosky the heroin and Gerlosky departed.

{¶11} Gerlosky admitted that, during the debriefing following the buy, he told the narcotics agents that he handed the money to Morris and that he ingested some of the heroin before blowing the rest of it away.

{¶12} Kimberly Krall, a forensic chemist at the Lake County Crime Laboratory, testified that the substance recovered from Gerlosky constituted 0.64 grams of heroin and the substance found at the West Jackson residence constituted 27.65 grams of heroin.

{¶13} Douglas Rhode, the supervisor of chemistry and toxicology at the Lake County Crime Laboratory, analyzed the heroin recovered from Gerlosky and the heroin found in the West Jackson residence. Rhode testified that both quantities of heroin contained other substances: diphenhydramine, mannitol, papaverine, noxetine and acidulated codeine. Diphenhydramine and mannitol are "cutting agents," i.e. "something that will be added to the pure drug." Papaverine, noxetine and codeine are components of poppy seed milk, occurring naturally in morphine, and may be present in heroin as residue from the conversion process. Based on the presence of these substances in the two quantities of heroin, Rhode testified that it was "probable," "60 percent, somewhere in that range," that they came from the same source.

{¶14} Sergeant Toby Burgett of the Painesville Police Department testified that, on February 6, 2013, he was performing surveillance of 207 West Jackson Street as part of the controlled buy targeting Morris and participated in Morris' arrest. Burgett recovered "over $1,000 in one of [Morris'] front pockets." Burgett assisted in the search of the residence. Burgett described the second bedroom, where the scale, heroin, and press were found, as having a bed with no sheets, a dresser, and a closet. Burgett testified that "it didn't appear anybody was actually living in that room."

{¶15} Special Agent 85 of the Lake County Narcotics Agency prepared Gerlosky for the February 6, 2013 controlled buy. Agent 85 also participated in the surveillance operation and collected the evidence from the West Jackson Street residence.

{¶16} Detective Jason Hughes of the Painesville Police Department participated in Morris' arrest on February 6, 2013, seizing from him a cellular phone. Hughes testified about the unsuccessful efforts to recover the marked money used in the controlled buy.

{¶17} Special Agent 88 of the Lake County Narcotics Agency participated in the surveillance operation and the arrest of Morris. Agent 88 testified that Morris' cellular number was 216-218-5769.

{¶18} Marcela Delvalle testified that, on February 6, 2013, she was at Nardi's house on West Jackson Street with Nardi, David Dawson (her boyfriend), Morris, and "random people." She identified the residence as Nardi's "home," but noted that "people just stayed there * * * and did whatever it was they did." Delvalle asked Morris for heroin that day but was told "it's not good right now." Delvalle assumed that Morris needed "to cut it," noting that Morris, like "everybody does," cuts his heroin with

5

mannitol. Delvalle recalled a white male coming to the house and buying drugs, which she believed was crack, from Morris.

{¶19} Delvalle admitted that she was arrested that day and charged with Possession of Heroin. Pursuant to a cooperation agreement with the State, she would be charged with a misdemeanor in exchange for her testimony.

{¶20} Raymond Jorz, the senior fingerprint and firearms examiner for the Lake County Crime Laboratory, examined the dinner plate taken from the West Jackson Street residence. Jorz was able to develop a single partial latent fingerprint on the back of the plate which he identified as belonging to Morris' right little finger.

{¶21} Detective Donald Seamon of the Lake County Sheriff's Office maintains the jail call system at the Lake County Jail. Seamon authenticated recordings of various telephone conversations Morris had while at the Lake County Jail.

{¶22} Special Agent 76 of the Lake County Narcotics Agency worked with Gerlosky in setting up the buy bust. Gerlosky first called Morris to ask if he would "be around later," and Morris said yes. Gerlosky then texted Morris "got 130," meaning $130 of heroin, and received the reply "K," meaning okay. Agent 76 testified that Gerlosky contacted Morris using the 216-218-5769 number.

{¶23} On the day of the buy bust, Agent 76 followed Gerlosky from Grant Street to First Street to West Jackson Street. Following the buy, Agent 76 met with Gerlosky and received a physical description of Morris, which information he radioed to the other officers and agents who effected Morris' arrest.

{¶24} At the close of Agent 76's testimony, a recording of telephone conversations Morris made while in jail was played for the jury. In these conversations,

Morris explained that they "fucked the whole case up": "I ain't never get no marked money. Pat got the marked money. They ain't never get the marked money from Pat." Morris spoke about recovering the $1,080 seized at the time of his arrest: "That's the money I made off drugs period but * * * they gotta prove it, they can't prove it." Morris spoke about having his telephones turned off: "Tell him it's just the 218-5769 * * * that's the main one. That's the one really need to get cut off."

{¶25} Morris identified Gerlosky (Dustin) as the informant, but claimed that he could not have been with the DEA because "I seen that dude do drugs." Morris also stated that "Dustin could have never been no informant for that long * * * I would have been catch him a long time ago when I first started fucking with him * * * he kind of like a 'day one' a little bit." When discussing whether Gerlosky had a wire, Morris asserted "we wiped that nigger down." He continued that, even if Gerlosky had a wire, there was too much noise in the house for a recording to be possible.

{¶26} At the close of the State's case, counsel for Morris moved for acquittal on all charges pursuant to Criminal Rule 29. The trial court denied the motion.

{¶27} The jury returned a verdict finding Morris guilty of all Counts and the following items subject to forfeiture: the heroin, cellular phone, glass plate, digital scale, razor blades, Sharpstone press, and $1,081 in cash.

{¶28} On May 28, 2013, a sentencing hearing was held. The trial court ordered Morris to serve a nine-month prison term for Trafficking in Heroin (Count 1), a nine-month prison term for Possessing Criminal Tools (Count 2), a mandatory six-year prison term for Possession of Heroin (Count 3), and a nine-month prison term for Possessing Criminal Tools (Count 4). The sentences were to be served consecutively with each

other for a total term of imprisonment of six years and consecutively with the sentence imposed in Lake County Court of Common Pleas Case No. 12-CR-000223.

{¶29} On May 31, 2013, the trial court memorialized Morris' sentence in a written Judgment Entry of Sentence.

{¶30} On June 11, 2013, Morris filed his Notice of Appeal.

{¶31} On March 12, 2014, the court issued a Judgment Entry, remanding the appeal to allow the trial court to consider a Motion for a New Trial, initially filed on February 12, 2014, and refiled after remand on March 24, 2014.

{¶32} On April 23, 2014, the trial court issued an Opinion and Judgment Entry, denying Morris' Motion for New Trial.

{¶33} On appeal, Morris raises the following assignments of error:

{¶34} "[1.] The trial court committed prejudicial error in failing to grant Defendant-Appellant's Rule 29 Motion concerning Counts 3 and 4. The evidence presented by the State lacked sufficient weight to sustain a conviction on Counts 3 and 4."

{¶35} "[2.] The trial court failed to hold a hearing and/or conduct a due process analysis to determine whether Defendant-Appellant Mr. Morris' substantial rights have been materially affected."

{¶36} In his first assignment of error, Morris argues that his convictions for Possession of Heroin (Count 3) and Possessing Criminal Tools (Count 4) are supported by insufficient evidence and/or are against the manifest weight of the evidence. Morris' convictions for Possession of Heroin and Possessing Criminal Tools were based on the 27.65 grams of heroin and the glass dinner plate, respectively, found in the dresser in

8

Nardi's home. Specifically, Morris contends that the State failed to prove that he possessed either the heroin or the plate.

**{¶37}** The manifest weight of the evidence and the sufficiency of the evidence are distinct legal concepts. *State v. Elmore*, 111 Ohio St.3d 515, 2006-Ohio-6207, 857 N.E.2d 547, ¶ 44. With respect to the sufficiency of the evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

**{¶38}** Whereas "sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, * * * weight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson,* 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997). "In other words, a reviewing court asks whose evidence is more persuasive -- the state's or the defendant's?" *Id.* An appellate court considering whether a verdict is against the manifest weight of the evidence must consider all the evidence in the record, the reasonable inferences, the credibility of the witnesses, and whether, "in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

9

**{¶39}** "'Possess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). "Constructive possession exists when an individual exercises dominion and control over an object, even though that object may not be within his immediate physical possession." *State v. Wolery*, 46 Ohio St.2d 316, 329, 348 N.E.2d 351 (1976).

**{¶40}** This court has often affirmed "that constructive possession of contraband may be supported solely by circumstantial evidence." *State v. Jackson*, 11th Dist. Lake No. 2011-L-107, 2012-Ohio-2123, ¶ 45 (cases cited).

**{¶41}** Morris maintains that, while there was evidence that he "was selling drugs within a residence used by many people," there was no evidence "that [he] ever lived there or kept his possessions there," or that he "was ever in the bedroom or, indeed, that he was aware of the contents." We disagree. *State v. Adams*, 11th Dist. Ashtabula No. 2012-A-0025, 2013-Ohio-1603, ¶ 39-40 (constructive possession may be found where the offender neither owned nor exercised exclusive control of the premises and/or contraband).

**{¶42}** There was abundant circumstantial evidence that Morris exercised dominion and control over the heroin and the plate. There was evidence that Morris was selling heroin out of the residence where the heroin and plate were found. The appearance and composition of the heroin sold matched the appearance and composition of the heroin found in the drawer. Morris' fingerprint was found on the plate. Despite the fact that other people were present in the house, there was no

evidence that any of them sold heroin and/or exerted control over the heroin and plate found in the drawer. It was reasonable to infer that the heroin Morris sold to Gerlosky was originally part of the heroin found in the drawer and that Morris used the plate and other drug paraphernalia (scale, razor blades, press) in the drawer to prepare the heroin for sale. Thus, Morris had sufficient control of the heroin and the plate to sustain his convictions. *Compare State v. Jester*, 12th Dist. Butler No. CA2010-10-264, 2012-Ohio-544, ¶ 26-27 (Jester's presence at a residence where drugs were found was sufficient to establish constructive possession).

**{¶43}** The first assignment of error is without merit.

**{¶44}** In his second assignment of error, Morris argues the trial court erred by denying his Motion for New Trial without hearing.

**{¶45}** "A new trial may be granted on motion of the defendant * * * [w]hen new evidence material to the defense is discovered, which the defendant could not with reasonable diligence have discovered and produced at the trial." Crim.R. 33(A)(6).

**{¶46}** "To warrant the granting of a motion for a new trial in a criminal case, based on the ground of newly discovered evidence, it must be shown that the new evidence (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence." *State v. Petro*, 148 Ohio St. 505, 76 N.E.2d 370 (1947), syllabus.

{¶47} "The granting of a motion for a new trial upon the ground [of newly discovered evidence] is necessarily committed to the wise discretion of the court, and a court of error cannot reverse unless there has been a gross abuse of that discretion. And whether that discretion has been abused must be disclosed from the entire record. * * * The new testimony proffered must neither be impeaching nor cumulative in character. Were the rule otherwise the defendant could often easily avail himself of a new trial upon the ground claimed. Unless the trial court or court of error, in view of the testimony presented to the court and jury, finds that there is a strong probability that the newly discovered evidence will result in a different verdict, a new trial should be refused." *State v. Lopa*, 96 Ohio St. 410, 411, 117 N.E. 319 (1917).

{¶48} Subsequent to Morris' conviction and sentencing, it was revealed that Gerlosky had been charged with Tampering with Evidence in Geauga County, based on Gerlosky's taking money and drugs while working as a CI. Gerlosky stated to a sheriff's deputy that, while "working with Mentor Police or Lake County Narcotics * * * that he took money once and dope once."

{¶49} The trial court found that Morris failed to demonstrate that the newly discovered evidence would have likely changed the result of trial, was material to the issues, and did not merely impeach Gerlosky's trial testimony. We agree.

{¶50} Gerlosky's theft of money and/or dope during a controlled buy is not relevant to the issue of whether it was Morris who sold him the heroin. Rather, this evidence would only serve to impeach Gerlosky's credibility. Even on this issue, the evidence was cumulative. At trial, Gerlosky admitted to giving contradictory statements about snorting the heroin prior to the buy and to whom he handed the money for the

12

buy.    As to whether it was Morris who sold Gerlosky the heroin, there was abundant corroborative evidence such as the texts to Morris' phone setting up the buy, Delvalle's testimony, the fingerprint linking Morris to the heroin found in the house, and Morris' own statements made in the recorded jail conversations.

**{¶51}** Morris argues that, since he "alleged that the prosecution suppressed evidence, he is not subject to the usual burden required to obtain a new trial – demonstrating that the newly discovered evidence *probably* would have resulted in acquittal."    We find no merit in the claim that the prosecution withheld exculpatory evidence.

**{¶52}** The Complaint against Gerlosky in Geauga County charges him with conduct occurring on April 25, 2013, the same date that the jury returned its guilty verdicts against Morris.  The Complaint was not issued until July 23, 2013, at which time Morris had already been sentenced.  Thus, the newly discovered evidence on which Morris relies did not exist until after the conclusion of his case.  It was not possible for the State to have withheld this evidence during Morris' trial.

**{¶53}**  The second assignment of error is without merit.

**{¶54}** For the foregoing reasons, Morris' convictions for Possession of Heroin and Possessing Criminal Tools and the denial of his Motion for New Trial are affirmed. Costs to be taxed against the appellant.


TIMOTHY P. CANNON, P.J.,

CYNTHIA WESTCOTT RICE, J.,

concur.

13