[Cite as *State v Thomason*, 2017-Ohio-7447.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| | | **CASE NO. 2016-A-0027** |
| - vs - | : | |
| JENNIFER L. THOMASON, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Ashtabula County Court of Common Pleas, Case No. 2013 CR 00156.

Judgment: Affirmed.

*Nicholas A. Iarocci,* Ashtabula County Prosecutor, and *Shelley M. Pratt,* Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047 (For Plaintiff-Appellee).

*Richard E. Hackerd,* 231 South Chestnut Street, Ravenna, OH 44266 (For Defendant-Appellant).

CYNTHIA WESCOTT RICE, P.J.

{¶1} Appellant, Jennifer L. Thomason, appeals from the judgment of the Ashtabula County Court of Common Pleas, based on a jury verdict, finding her guilty of aggravated possession of drugs, and illegal assembly or possession of chemicals for the manufacture of drugs, and sentencing her to a total term of five years imprisonment. Appellant contends her trial counsel was ineffective for failing to move to suppress the

evidence against her, and that her convictions are premised on insufficient evidence, and are against the manifest weight of the evidence. We affirm.

{¶2}    On March 5, 2015, Detective Sean Ward of the Ashtabula County Sheriff's Department received an email tip that Josh Hall was engaged in the manufacture of methamphetamine at the Motel 6 in Harpersfield Township, Ashtabula County, Ohio. Detective Ward contacted Detective George Cleveland. The detectives went to the motel, and spoke with the desk clerk, who told them that Mr. Hall had rented two rooms on the second floor, and that an associate of his had rented one on the first floor. She further advised that Mr. Hall had checked out. She gave the detectives a pass key card, which they used to explore the first floor room, No. 124, which had some personal items in it, but no signs of methamphetamine manufacture. They proceeded to the second floor and checked one of Mr. Hall's former rooms, No. 227, which they found empty.

{¶3}    Finally, the detectives went to Room No. 228. The pass key card opened the door, but it was latched from inside. Upon identifying themselves, a woman (appellant), asked them to wait while she got dressed. The detectives waited three to five minutes, hearing shuffling noises in the room, before Appellant opened the door and came out into the hallway. She and Detective Ward moved a few feet down the hallway to talk.

{¶4}    Detective Cleveland remained at the door. He saw a man sitting on one of the beds in the room, and asked the man, Michael Dixon, to come to the door. The detective informed him of the complaint, and asked to see his identification. While Mr. Dixon retrieved the identification, Detective Cleveland smelled the odor of methamphetamine emanating from the room. Detective Cleveland, while a member of

2

the Ashtabula County Sheriff's Department, was also assigned to a task force of the United States Drug Enforcement Agency in Cleveland, acting as the county liaison. He has investigated more than 100 methamphetamine labs. Detective Cleveland followed Mr. Dixon into the room, and spotted two Mason jars on the floor, one filled with clear liquid. This was later identified as a methamphetamine precursor. He also spotted a gray back pack. The detective testified at trial that the elements of methamphetamine labs are often disassembled and transported in backpacks.

**{¶5}** Mr. Dixon and appellant were arrested. Detective Cleveland contacted the local fire department to come ventilate the room; put on his protective gear; and began processing the scene, finding the equipment and elements for manufacturing methamphetamine. After he took Mr. Dixon and appellant downstairs, Detective Ward put on his protective gear, and joined the search. The detectives later took certain evidence from Room No. 221, which had also been rented by Mr. Hall, when advised by cleaning staff the room contained suspicious items. They also found equipment relating to the operation of a methamphetamine lab in a locked box in Mr. Dixon's truck.

**{¶6}** On April 2, 2015, appellant was indicted on three counts. The first was for illegal manufacture of drugs, in violation of R.C. 2925.04, a first-degree felony; the second was for aggravated possession of drugs, in violation of R.C. 2925.11, a second-degree felony; the third was for illegal assembly or possession of chemicals for the manufacture of drugs, in violation of R.C. 2925.04, a second-degree felony. Appellant pleaded not guilty to all charges. Plea negotiations failed. A jury trial commenced January 4, 2016, and concluded the following day. On appellant's Crim.R. 29 motion, the trial court dismissed the first count of the indictment. The trial court further

dismissed a specification in the third count, alleging the criminal activity therein had occurred in the vicinity of a juvenile or school, reducing the third count to a third degree felony.

{¶7} The jury subsequently found appellant guilty on the second and third counts of the indictment. A sentencing hearing went forward on March 1, 2016. By a judgment entry filed March 7, 2016, the trial court sentenced appellant to three years imprisonment on the second count, and five years imprisonment on the third count, that term being mandatory. The trial court further assessed court costs, but waived the mandatory fine attached to the third count, informed appellant she would be subject to three years post release control, and suspended her driver's license for six months.

{¶8} Appellant timely noticed this appeal, assigning three errors. The first provides:

{¶9} "Defendant-appellant was denied the effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the U.S. Constitution and Article I, Section X of the Ohio Constitution where his [sic] counsel failed to file a motion to suppress."

{¶10} Appellant contends she was prejudiced by counsel's failure to file a motion to suppress evidence based upon the warrantless entry into the hotel room in which she and the contraband were found.

{¶11} To establish ineffective assistance of counsel, appellant must show that counsel's actions fell below an objective standard of reasonableness and that appellant was prejudiced as a result. *Strickland v. Washington,* 466 U.S. 668, 687–88, 693 (1984). Prejudice occurs where there is a reasonable probability that, but for counsel's

4

errors, the result of the trial would have been different. *Id.* at 694. When the ineffective assistance claim is predicated upon the failure to submit a motion to suppress particular evidence, "'an appellant must point to evidence in the record showing there was a reasonable probability the result of [the] trial would have differed if the motion had been filed or pursued.'" *State v. Woodard,* 11th Dist. Ashtabula No. 2009-A-0047, 2010-Ohio-2949, ¶14, quoting *State v. Gaines,* 11th Dist. Lake Nos. 2006-L-059 and 2006-L-060, 2007-Ohio-1375, ¶17. "Hence, to establish prejudice, an appellant must prove more than a mere *possibility* that the motion could have been granted; rather, he or she must show a *reasonable probability* that, but for the omission, the result of the proceedings would have been different." *State v. DelMonico,* 11th Dist. Ashtabula No. 2003-A-0022, 2005-Ohio-2902, ¶20.

{¶12} "The Fourth Amendment safeguards: '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, *and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.*'" (Emphasis sic.) *State v. Andrews*, 177 Ohio App.3d 593, 2008-Ohio-3993, ¶19 (11th Dist.) Quoting the Fourth Amendment to the United States Constitution. "It is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586 (1980). The United States Supreme Court has made clear that "in terms that apply equally to seizures of property and seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house." *Id.* at 590. "Absent exigent circumstances, that threshold may not

5

reasonably be crossed without a warrant." *Id.* The exigent circumstances doctrine mandates that, in the absence of a search warrant, probable cause plus exigent circumstances are required to for a warrantless entry of a home. *Kirk v. Louisiana*, 536 U.S. 635, 637 (2002), citing *Payton, supra,* at 590.

{¶13} As appellant points out, "a person's hotel room, like a person's home, must be free of warrantless intrusions; any lesser standard is presumptively unreasonable. *Middleburg Hts. v. Theiss*, 28 Ohio App.3d 1, 3 (8th Dist.1985), citing *Payton*, *supra*. She ignores, however, the effect of R.C. 2933.33(A), which provides:

{¶14} If a law enforcement officer has probable cause to believe that particular premises are used for the illegal manufacture of methamphetamine, for the purpose of conducting a search of the premises without a warrant, the risk of explosion or fire from the illegal manufacture of methamphetamine causing injury to the public constitutes exigent circumstances and reasonable grounds to believe that there is an immediate need to protect the lives, or property, of the officer and other individuals in the vicinity of the illegal manufacture.

{¶15} In this case, Detective Cleveland, a police officer with extensive experience investigating methamphetamine labs, smelled the distinctive odor of the drug emanating from appellant's motel room. This provided him with exigent circumstances to conduct a warrantless search.

{¶16} The first assignment of error lacks merit.

{¶17} Appellant's second assignment of error reads:

{¶18} "Appellant was wrongfully convicted when the State failed to establish the weight of the drug possessed which is an essential element of the crime of Aggravated Possession of Drugs (ORC 2925.11(C)(1)(c)."

{¶19} Under this assignment of error, appellant argues that the state was required to establish the actual amount of methamphetamine in the seized liquid before that amount could be compared to the abstract "bulk amount," in order to determine whether she possessed more than the bulk amount. We disagree.

{¶20} Appellant was charged and convicted for aggravated possession of drugs, in violation of R.C. 2925.11, which provides, in pertinent part:

{¶21} (A) No person shall knowingly obtain, possess or use a controlled substance analog.

{¶22} "* * *

{¶23} (C) Whoever violates division (A) of this section is guilty of one of the following:

{¶24} (1) If the drug involved in the violation is a compound, mixture, preparation, or substance included in schedule I or II, with the exception of marihuana, cocaine, L.S.D., heroin, hashish, and controlled substance analogs, whoever violates division (A) of this section is guilty of aggravated possession of drugs. The penalty for the offense shall be determined as follows:

{¶25} * * *

{¶26} (c) If the amount of the drug involved equals or exceeds five times the bulk amount but is less than fifty times the bulk amount, aggravated possession of drugs is a felony of the second degree, and the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the second degree."

{¶27} R.C. 2925.01(D)(1)(g) defines "bulk amount" as:

{¶28} (g) An amount equal to or exceeding three grams of a compound, mixture, preparation, or substance that is or contains any amount of a schedule II stimulant, or any of its salts or isomers, that is not in a final dosage form manufactured by a person authorized by the Federal Food, Drug, and Cosmetic Act and the federal drug abuse control laws.

{¶29} At trial, Anna Tabor, a scientist with the Ohio Bureau of Criminal

Investigation, testified that she analyzed the liquid taken from appellant's motel room; that the liquid contained methamphetamine; and that the total weight of the liquid was some 96.53 grams – more than five times the bulk amount (15 grams), but less than 55 times the bulk amount (165 grams). This liquid, however, was merely a precursor to ingestible methamphetamine. Appellant argues the state was required to prove the amount of methamphetamine in the precursor or the amount that would have resulted from this liquid.

{¶30} We review a trial court's interpretation and application of statutes de novo. *State v. Owen*, 11th Dist. Lake No. 2012-L-102, 2013-Ohio-2824, ¶17. A cardinal rule is that the courts of Ohio must construe unambiguous statutes according to their plain language. If the meaning of the statute is unambiguous and definite, it must be applied as written and no further interpretation is necessary. *State ex rel. Savarese v. Buckeye Local School Dist. Bd. of Edn.*, 74 Ohio St. 3d 543, 545 (1996).

{¶31} In her brief, appellant urges us to consider *State v. Gonzales*, which was accepted by the Supreme Court of Ohio both on a certified conflict, and on discretionary appeal. *State v. Gonzales*, 143 Ohio St.3d 1402, 2015-Ohio-2747, and 143 Ohio St.3d 1403, 2015-Ohio-2747. The court announced its decision December 23, 2016. *State v. Gonzales*, Slip Opinion No. 2016-Ohio-8319. In relevant part, the court held that the state must prove the weight of actual cocaine in a defendant's possession, apart from any admixture or filler. *Id.* at ¶22. In doing so, the court reasoned that the definition of "cocaine" set forth at 2925.01(X) does not include the word "mixture." *Id.* at ¶15, 19. The definition of methamphetamine set forth at R.C. 2925.01(II), however, includes the word "mixture." In reaching its conclusion that the definition of "cocaine" means only the

drug itself, the court in *Gonzales* specifically cited this difference in the definitions of "cocaine" and "methamphetamine." *Gonzales*, *supra*, at ¶19. Further, on March 6, 2017, the Supreme Court of Ohio issued a new opinion in *Gonzales*, on the state's motion for reconsideration. The court reversed its prior holding, and concluded that for purposes of the drug possession statute, all the state must prove regarding weight of cocaine is the total weight of the cocaine, including any filler. *State v. Gonzales*, 2017-Ohio-777, ¶18. *Gonzales*, in light of its recent schizophrenic procedural and substantive history, does not necessarily inform our analysis.

{¶32} As noted, R.C. 2925.01(I)(I) defines methamphetamine as "methamphetamine, any salt, isomer, or salt of an isomer of methamphetamine, or any compound, *mixture*, preparation, or substance containing methamphetamine or any salt, isomer, or salt of an isomer of methamphetamine." There was no evidence to suggest that the precursor at issue was a salt, isomer, or salt of an isomer of methamphetamine or a compound, mixture, preparation, or substance containing such things. Despite this point, Ms. Tabor testified she tested the bottles taken during the search and determined that two of the bottles contained methamphetamine.

{¶33} R.C. 2925.01(I)(I) presupposes that, regardless of the conditional medium, a compound, mixture, preparation, or substance *must* contain methamphetamine to be considered, as a matter of law, methamphetamine. Although a precursor, by definition, is the substance *from which* methamphetamine is formed, there was still some amount of methamphetamine in the mixture. And, while the precursor may not have been usable methamphetamine *and* its weight contributed to a more elevated charge, the unambiguous language of R.C. 2925.01(I)(I) states that a mixture or substance that

9

contains methamphetamine is methamphetamine. The precursor (qua mixture, substance, or preparation) seized during the search contained some undisclosed amount of methamphetamine and, as a result, it is methamphetamine as defined by the legislature. There was accordingly sufficient evidence that the precursor was a mixture, substance, or preparation that contained methamphetamine pursuant to R.C. 2925.01(I)(I).

{¶34} Appellant contends, however, that the precursor was not a drug because "drug" is defined as "any other article * * * intended to affect * * * any function of the body * * *." R.C. 2925.01 and R.C. 4729.01(E)(3). Because the precursor was not intended to affect the body's function, appellant maintains it is not a drug and cannot be a basis for the charge of aggravated possession of drugs. Although, on its face, appellant makes an interesting point, methamphetamine is a drug and, as factually strange as it may be, the precursor is statutorily methamphetamine in this case.

{¶35} We acknowledge the ridiculousness of convicting an individual of aggravated possession of drugs even though the "drug," in its existing form, was not marketable or useable. We must, however, apply the unambiguous language of the law as written. And unless or until the legislature changes the definition of methamphetamine to *exclude* compounds, mixtures, preparations, or substances that are not useable, strange and arguably absurd results will be achieved. In light of the statutory definition of methamphetamine, the state presented sufficient evidence to establish the total weight of the liquid precursor was more than five times the bulk amount.

{¶36} Appellant's second assignment of error lacks merit.

10

**{¶37}** Appellant's third assignment of error asserts:

**{¶38}** "The state failed to establish possession of the drugs or chemicals as required for conviction of counts two and/or three."

**{¶39}** Under this assignment of error, appellant argues that possession is a necessary element for conviction of either aggravated possession of drugs, or illegal assembly or possession of chemicals for the manufacture of drugs. She asserts the state failed to present sufficient evidence she possessed either the methamphetamine found in her room, or the equipment for the methamphetamine lab, and, further, that her convictions of each crime are against the manifest weight of the evidence.

**{¶40}** Appellant cites to R.C. 2925.01(K), which provides: "'Possess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." The Mason jars and the backpack were both next to Mr. Dixon's bed, not hers; Mr. Dixon testified on her behalf at trial, and firmly maintained that the drugs and the methamphetamine lab equipment were his sole property.

**{¶41}** A "sufficiency" argument raises a question of law as to whether the prosecution offered some evidence concerning each element of the charged offense. *State v. Windle,* 11th Dist. Lake No.2010-L-0033, 2011-Ohio-4171, ¶25. "[T]he proper inquiry is, after viewing the evidence most favorably to the prosecution, whether the jury could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Troisi,* 179 Ohio App.3d 326, 2008-Ohio-6062 ¶9 (11th Dist.)

**{¶42}** In contrast, a court reviewing the manifest weight observes the entire

11

record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Schlee,* 11th Dist. Lake No. 93-L-082, 1994 WL 738452, *14-*15 (Dec. 23, 1994).

{¶43} The state argues it presented evidence that appellant had "constructive" possession of the methamphetamine and drug paraphernalia. In *State v. Adams*, 11th Dist. Ashtabula No. 2012-A-0025, 2013-Ohio-1603, ¶35, this court held:

{¶44} "Possession of drugs can be either actual or constructive." *State v. Fogle,* 11th Dist. No.2008–P–0009, 2009–Ohio–1005, ¶28. "Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession." *State v. Hankerson,* 70 Ohio St.2d 87 (1982), syllabus. "Even if the contraband is not in a suspect's 'immediate physical possession,' the suspect may still constructively possess the item, so long as the evidence demonstrates that he "was able to exercise dominion and control over the controlled substance." *Fogle* at ¶28, citing *State v. Lee,* 11th Dist. No.2002-T-0168, 2004-Ohio-6954, ¶41. To prove constructive possession, "[i]t must also be shown that the person was conscious of the presence of the object." *Hankerson*, *supra*, at 91. Further, constructive possession can be proved solely by circumstantial evidence. *Adams*, *supra*, at ¶38.

{¶45} The state introduced evidence that appellant was living in the room at the Motel 6 where the methamphetamine precursor, which, as discussed above, was sufficient to establish aggravated possession of drugs, as well as the lab equipment was

12

found. It introduced evidence that it took from three to five minutes for appellant to answer the door once Detectives Ward and Cleveland tried to open it, and both detectives testified they heard shuffling noises in the room during this interval. Detective Cleveland testified the backpack containing the lab equipment was soaked from an open container of lighter fluid, which is used in manufacturing methamphetamine. There was evidence the trash container in the room contained coffee filters and cotton balls soaked with solvent – all used in the manufacture of methamphetamine. From the totality of this evidence, a jury could infer that appellant and Mr. Dixon were in the process of assembling or using the methamphetamine lab when the detectives arrived, and hastily disassembled it. Thus, the state introduced evidence that appellant could exercise dominion and control over the precursor and methamphetamine lab equipment, and that she was aware they were in the motel room. The state introduced sufficient evidence of constructive possession of each crime, and the jury's conclusion Ms Thomason possessed the lab equipment and chemicals was not against the manifest weight of the evidence.

{¶46} The third assignment of error lacks merit.

{¶47} The judgment of the Ashtabula County Court of Common Pleas is affirmed.


TIMOTHY P. CANNON, J., concurs,

COLLEEN MARY O'TOOLE, J., concurs in judgment only.

13